UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARIA VICTORIA FERRER,**

          Plaintiff,

vs.

**DETROIT CLUB MANAGEMENT CORP** d/b/a **THE DETROIT CLUB**, **SUZETTE DAYE**, and **LYNN URALLI,**
jointly and severally,

          Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff **MARIA VICTORIA FERRER** for her Complaint against Defendants Detroit Club Management Corp d/b/a The Detroit Club, Suzette Daye, and Lynn Uralli, stating the following:

## INTRODUCTION

1.     Plaintiff Maria Victoria Ferrer was a front desk agent employed at the Detroit Club until she was abruptly terminated after vocalizing racially discriminatory acts and comments made by her supervisor, Defendant Suzette Daye, and the Club's president, Defendant Lynn Uralli. Plaintiff witnessed and reported several incidents in which Defendants were openly hostile or disparately enforced rules against African American patrons.  In response, Defendants brushed off Plaintiff's complaints and even questioned her for being "too sensitive about racial discrimination." Ultimately, Plaintiff was terminated shortly after an incident in which she objected to Defendant Uralli referring to an African American patron using the Club's restroom as a "street rat." Following Plaintiff's termination, another employee resigned due to the intolerable racism he witnessed. After, Defendant Uralli messaged the employee threatening both he and the Plaintiff's safety and professional careers in retaliation for their complaints.

Within this Complaint, Plaintiff alleges she was subjected to a hostile workplace, and terminated in retaliation for protected activity, specifically submitting complaints to her supervisors regarding racism she observed in the workplace, as well as her association and support of with African American patrons, in violation of 42 U.S.C. § 1981 and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. seq.*

## PARTIES

2. Plaintiff Maria Victoria Ferrer is a Latino individual who was employed with the Defendants and resides in the Eastern District of Michigan, specifically, Wayne County, Michigan.

3. Defendant Detroit Club Management Corp is a domestic profit corporation organized under the laws of the State of Michigan and operates within the State of Michigan. Plaintiff was an employee of Defendant.

4. Defendant Suzette Daye is an individual and agent of Defendant Detroit Club Management Corp. At all times relevant to this lawsuit Mrs. Daye was Plaintiff's supervisor. Upon information and belief, Mrs. Daye resides within the Eastern District of Michigan.

5. Defendant Lynn Uralli is an individual, agent, and owner of Defendant Detroit Club Management Corp. At all times relevant to this lawsuit, Mrs. Uralli had supervisory control over the Plaintiff. Upon information and belief, Mrs. Uralli resides within the Eastern District of Michigan.

## JURISDICITON AND VENUE

6. This Court has original jurisdiction of Plaintiff's claims under to 42 USC § 1981 pursuant to 28 U.S.C. § 1331.

7. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

9. The Detroit Club is a nearly 130 year old historic club that operates in the City of Detroit which has entertained Presidents, celebrities, and other dignitaries.

10. In 2014, the Detroit Club was purchased by Emre Uralli and Defendant Lynn Uralli.

11. The Detroit Club is a historically private club (currently open to the public) which consists of a restaurant, bar, spa, and several rooms for overnight accommodations.

12. Maria Victoria Ferrer ("Plaintiff") is a Latino woman.

13. On or around March 17, 2022, Plaintiff was hired by Defendant Detroit Club Management Corp ("The Detroit Club") as a front desk agent.

14. Generally, the Detroit Club has a dress code requiring patrons to dress either "Smart Casual" or "Business Casual." However, this dress code was typically not enforced in relation to overnight guests as they were checking into their rooms.

15. As a front desk agent, Plaintiff was supervised by Defendant Suzette Daye ("Daye").

16. Early into her employment with Defendants, Plaintiff noticed Daye disparately enforcing the Detroit Club's dress code against African Americans.

4

17. Furthermore, Daye made several comments about African American patrons not being dressed properly despite being dressed to the Detroit Club's code.

18. Daye would also jokingly refer to Plaintiff as being Mexican even though she explained that, although she is Latino, she is not Mexican.

19. In or around early April 2022, an incident occurred when Plaintiff, pursuant to customary practices, allowed an African American couple to check into their room while out of dress code. When the couple came back down from their room, Plaintiff explained the dress code to which the couple stated that they were local and would obtain proper attire and return. Despite the matter being resolved, Daye approached and asked the lady of the couple if there was a problem. The lady replied she was unhappy with dress code. Daye responded by aggressively asserting "we have a dress code here and if you don't like it then you can leave" directly in the woman's face. The woman asked Daye to back away from her face to which Daye refused, responding that she was "fine right here." After, the African American couple sought to leave permanently and for a refund. Daye acted eerily pleased after throwing out this African American couple.

20. Prior to that point, Plaintiff observed several Caucasian couples check into overnight rooms without adhering to the dress code in the presence of Daye without any issue.

21. The following day, Plaintiff notified Daye that she believed her actions amounted to racial harassment of the couple. Daye became defensive and told Plaintiff to speak with the owner, Lynn Uralli ("Uralli").

22. Plaintiff met with Uralli who brushed off Plaintiff's allegations. Additionally, Uralli questioned Plaintiff "do you think your black?" and then stated that Plaintiff seemed defensive and sensitive about racial discrimination.

23. Uralli then asked Plaintiff what she thought should be done. Plaintiff responded that Uralli is the owner, and it is up to her to do something. On information and belief, nothing was done.

24. In another incident, a very well dressed African American woman wearing a leopard print suit approached the desk and asked about a "Mr. Brown." As before, Daye aggressively approached the woman and exclaimed "we don't know a Mr. Brown or have a Mr. Brown in here." The woman stated that she was going to wait because she was certain he was there. Daye stormed off visibly angry. After, Mr. Brown, a guest and prominent political candidate, greeted the woman. The woman vocalized her anger with the discriminatory treatment she received from Daye. Plaintiff was able to diffuse the situation by asking her if she would like for Plaintiff to take her coat while she waited. After, Mr. Brown rightfully inquired what was going on and why his guest was treated in that manner. Plaintiff was able to diffuse the situation. On information and belief, the complaints of the African American woman and Mr. Brown were not investigated.

25. On or around April 9, 2022, Plaintiff's coworker, Charles Lisee ("Lisee"), submitted a complaint to his manager, Chance Armstrong ("Armstrong"), that the Detroit Club was not addressing ongoing racism, having witnessed several incidents and/or the subsequent fallout. Lisee also complained that several non-Caucasian guests were being verbally brutalized when they entered the club. On information and belief, Armstrong acknowledged Daye's hostility during this conversation but stated that a previous employee who recently resigned was way worse when it came to racial discrimination.

26. On April 22, 2022, another incident arose when an African American couple was checking into their room. The African American man noted that he is a musician and asked if he would be able to do a short video in his room. Daye jumped into the conversation saying that they are not allowed to have more than two individuals in the room. Plaintiff was shocked as she had witnessed Daye state otherwise to Caucasian guests. After, the African American woman stated that she would leave the room so that the camera man could be the second individual.

27. After the incident, Plaintiff reminded Daye that the previous week Daye informed a Caucasian couple that it was ok for them to have another Caucasian couple join them in their room. Plaintiff asked Daye why she didn't inform the Caucasian couple that it was against the rules? Daye claimed she did not remember the incident.

28. On April 23, 2022, the Detroit Tigers were scheduled to play a day game. As a result, Daye notified Plaintiff that the club was being relaxed about the dress code.

29. An African American couple entered the club out of dress code, but the to the same level as Caucasian patrons. Uralli noticed the couple and exclaimed to Plaintiff "are they guests? So, you're letting street rats come in?" The African American man, Kody Hook, heard Uralli's comments and approached her stating that he heard her comments and that she lost a potential new member[1]. After, Plaintiff objected to the clearly racist comment to which Uralli responded by berating her.

30. After Plaintiff finished her shift, Armstrong asked to walk Plaintiff to her vehicle. During the walk, Plaintiff stated that there have been so many racial incidents that have made her uncomfortable. Armstrong responded, "then I think we should call it." Plaintiff was confused. Armstrong elaborated that Uralli had pulled him aside and asked him to terminate Plaintiff.

31. On April 25, 2022, Plaintiff's coworker, Lisee, resigned from his position after learning of Plaintiff's termination. Lisee felt he had no choice but to resign as nothing was being done to address the ongoing discriminatory practices previously reported.

---

[1] Kody Hook later left a negative review regarding the incident on google reviews labeling Uralli as a "racist a** owner." *Exhibit A* Within the review, Mr. Hook also states that Uralli referred to him and his partner "street rats." Notably, the Detroit Club's owner, presumably Uralli, denied that this individual ever even stepped foot in the club. *Exhibit A*

32. On April 26, 2022, Uralli text messaged Lisee threatening to "destroy him." ***Exhibit B*** Next, Uralli stated that Lisee should call Plaintiff before Uralli had Plaintiff "put behind bars." ***Exhibit B*** Uralli also threatened to go after Plaintiff and Lisee's real estate licenses[2]. ***Exhibit B***

33. In the texts, Uralli also instructed Lisee to tell his "little friend" Plaintiff to have Kody, the African American patron who alleged discrimination, to remove his negative review of the Detroit Club. ***Exhibit B*** Within the message, Uralli indicated that she investigated Kody's background and that he's on probation for child abuse. ***Exhibit B*** Further, that someone would be checking every hour to confirm that the negative review was removed. ***Exhibit B***

34. On information and belief Plaintiff was replaced by a Caucasian individual.

## COUNT I
## RETALIATION - 42 U.S.C. § 1981
(*Against all Defendants*)

35. All preceding paragraphs are incorporated by reference.

36. As an employee, Plaintiff had a contractual employment relationship with Defendant Detroit Club Management Corp.

37. Defendants Suzette Daye and Lynn Uralli are agents of Defendant Detroit Club Management Corp. with supervisory power over the Plaintiff.

---

[2] Both Plaintiff and Lisee also work as real-estate agents.

9

38. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when she complained of the unequal and discriminatory treatment African American patrons, guests, and invitees were subjected to compared to Caucasians.

39. Defendants retaliated against Plaintiff due to this protected activity.

40. Defendants terminated Plaintiff in retaliation of Plaintiff's protected activity.

41. Defendants have threatened to interfere with Plaintiff's professional career as a real estate agent in retaliation for her protected activity.

42. Defendants threatened to seek criminal prosecution of Plaintiff and/or to "put her behind bars" in retaliation for her protected activity.

43. Defendants' termination of Plaintiff's employment on this basis violates 42 U.S.C. § 1981.

44. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT II
## RETALIATION - ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*
(*Against all Defendants*)

45. All preceding paragraphs are incorporated by reference.

46. At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

47. Plaintiff engaged in protected activity when she complained of the unequal and discriminatory treatment African American patrons, guests, and invitees were subjected to compared to Caucasians.

48. Defendants retaliated against Plaintiff due to this protected activity.

49. Defendants terminated Plaintiff in retaliation of Plaintiff's protected activity.

50. Defendants have threatened to interfere with Plaintiff's professional career as a real estate agent in retaliation for her protected activity.

51. Defendants threatened to seek criminal prosecution of Plaintiff and/or to "put her behind bars" in retaliation for her protected activity.

52. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the

ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT III
## RACIAL DISCRIMINATION - 42 U.S.C. § 1981
*(Against all Defendants)*

53. All preceding paragraphs are incorporated by reference.

54. Plaintiff is a member of a protected class as a Latino.

55. Regardless of Plaintiff's race or heritage, Plaintiff has a right to work in a workplace free from racial discrimination.

56. Defendants made racist comments and held African American patrons to a different standard.

57. Defendants were objectively hostile to African American patrons.

58. When Plaintiff notified Defendant Uralli of the racially hostile treatment to African American patrons that she perceived, Uralli responded "[d]o you think you're black?" (Plaintiff is Latino)

59. The racially discriminatory harassment and treatment witnessed by Plaintiff and depriving her of a diverse work environment was done by Plaintiff's direct supervisor(s).

60. The racially discriminatory work environment impacted the terms and conditions of Plaintiff's employment with Defendants.

61. Defendants conduct was severe and/or pervasive enough to create a hostile work environment for the Plaintiff.

62. Plaintiff made Defendants aware of the racially hostile work environment and they terminated her rather than resolve the issues.

63. Plaintiff was informed she was "not a good fit" to be employed with Defendants for associating with and supporting the equal treatment of African Americans.

64. Defendants discriminated against and terminated Plaintiff for associating with and supporting the equal treatment of African Americans.

65. Defendants were aware of the racially hostile work environment and abuse Plaintiff was facing and failed to act. Rather than resolve these issues, Defendants terminated Plaintiff.

66. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT IV
## RACIAL DISCRIMINATION
## ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*
(*Against all Defendants*)

67.     All preceding paragraphs are incorporated by reference.

68.     At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

69.     Plaintiff is a member of a protected class as a Latino.

70.     Regardless of Plaintiff's race or heritage, Plaintiff has a right to work in a workplace free from racial discrimination.

71.     Defendants made racist comments and held African American patrons to a different standard.

72.     Defendants were objectively hostile to African American patrons.

73.     Defendants' racially discriminatory work environment impacted the terms and conditions of Plaintiff's employment with Defendants.

74.     Defendants conduct was severe and/or pervasive enough to create a hostile work environment for the Plaintiff due to her association and support of African Americans.

75.     When Plaintiff notified Defendant Uralli of Defendants' racially hostile treatment of African American patrons that she perceived, Uralli responded "[d]o you think you're black?" (Plaintiff is Latino)

76. Plaintiff was informed she was "not a good fit" to be employed with Defendants for associating with and supporting the equal treatment of African Americans.

77. Defendants discriminated against and terminated Plaintiff for associating with and supporting the equal treatment of African Americans.

78. Defendants were aware of the racially hostile work environment and abuse Plaintiff was facing and failed to act. Rather than resolve these issues, Defendants terminated Plaintiff.

79. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

80. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

### **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Honorable Court:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of § 1981 and ELCRA;

b. Award Plaintiffs all lost wages and benefits, past and future, to which she is entitled;

c. Award Plaintiffs appropriate equitable relief;

d. Award Plaintiffs compensatory damages;

e. Award Plaintiffs punitive damages;

f. Award Plaintiffs reasonable attorney fees, costs and interest; and

g. Award such other relief as this Court deems just and proper.

          Respectfully submitted,

          By: /s/ Jack W. Schulz
          Jack W. Schulz (P78078)
          SCHULZ LAW PLC
          PO Box 44855
          Detroit, MI 48244
          (313) 246-3590
          jackwschulz@gmail.com
          *Attorneys for Plaintiff*

DATE: June 26, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARIA VICTORIA FERRER,**

        Plaintiff,

vs.

**DETROIT CLUB MANAGEMENT CORP** d/b/a **THE DETROIT CLUB**, **SUZETTE DAYE**, and **LYNN URALLI**, jointly and severally,

        Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## DEMAND FOR TRIAL BY JURY

Plaintiff Maria Victoria Ferrer hereby demand for a trial by jury.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

DATE: June 26, 2022