UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARIA VICTORIA FERRER**
**CHARLES LISÉE,** and
**MIYA SHANI HOOKS,**

              Plaintiffs,

vs.

**DETROIT CLUB MANAGEMENT**
**CORP** d/b/a **THE DETROIT CLUB**,
**SUZETTE DAYE**, and **LYNN URALLI,**
jointly and severally,

              Defendants.

Case No. 22-cv-11427

Hon. Linda V. Parker
Magistrate Judge Kimberly G. Altman

| | |
|---|---|
| Jack W. Schulz (P78078) | Gregory M. Meihn (P38939) |
| SCHULZ LAW PLC | Matthew T. Wise (P76794) |
| PO Box 44855 | GORDON REES SCULLY |
| Detroit, MI 48244 | MANSUKHANI |
| (313) 246-3590 | Attorneys for Defendants |
| jackwschulz@gmail.com | 37000 Woodward Avenue, Suite 225 |
| *Attorneys for Plaintiff* | Bloomfield Hills, MI 48304 |
| | (313) 426-9815 \| Fax: (313) 406-7373 |
| | gmeihn@grsm.com |
| | mwise@grsm.com |

## <u>AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>

There is no other civil action pending in
this Honorable Court or any other Court
arising out of the same transaction and
occurrence.

NOW COMES Plaintiff **MARIA VICTORIA FERRER, CHARLES LISÉE,** and **MIYA SHANI HOOKS** for their Complaint against Defendants Detroit Club Management Corp d/b/a The Detroit Club, Suzette Daye, and Lynn Uralli, stating the following:

## INTRODUCTION

1. Collectively, each Plaintiff was employed at the Detroit Club until they were terminated or otherwise forced out the door after submitting complaints of racism each witnessed at the club in relation to its treatment of African American guests, contractors, promoters, and coworkers. According to the Plaintiffs, as well as at least one former high-level contractor, the Detroit Club's pattern of racial insensitivity stems from its owner and president, Defendant Lynn Uralli, who frequently used racial slurs, disparately treated minorities, and swept internal complaints of racism aside. Ultimately, the employees who complained of racism were retaliated against and terminated. Following their separations, Uralli continued her retaliation against each former worker through direct threats on their safety and careers.

Within this Complaint, Plaintiffs allege they were subjected to a hostile workplace, racial discrimination, and terminated in retaliation for protected activity, specifically submitting complaints to their supervisors regarding observed racism in the workplace in violation of 42 U.S.C. § 1981 and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. seq.*

2

## PARTIES

2.      Plaintiff Maria Victoria Ferrer is a Latino individual who was employed with the Defendants and resides in the Eastern District of Michigan, specifically, Wayne County, Michigan.

3.      Plaintiff Charles Lisée is a Caucasian individual who was employed with the Defendants and resides in the Eastern District of Michigan, specifically, Oakland County, Michigan.

4.      Plaintiff Miya Shani Hooks is an African American individual who was employed with the Defendants and resides in the Eastern District of Michigan, specifically, Wayne County, Michigan.

5.      Defendant Detroit Club Management Corp is a domestic profit corporation organized under the laws of the State of Michigan and operates within the State of Michigan. Plaintiff was an employee of Defendant.

6.      Defendant Suzette Daye is an individual and agent of Defendant Detroit Club Management Corp.  At all times relevant to this lawsuit Mrs. Daye was Plaintiff's supervisor.  Upon information and belief, Mrs. Daye resides within the Eastern District of Michigan.

7.      Defendant Lynn Uralli is an individual, agent, and owner of Defendant Detroit Club Management Corp. At all times relevant to this lawsuit, Mrs. Uralli had

supervisory control over the Plaintiff. Upon information and belief, Mrs. Uralli resides within the Eastern District of Michigan.

## JURISDICITON AND VENUE

8.     This Court has original jurisdiction of Plaintiffs' claims under to 42 USC § 1981 pursuant to 28 U.S.C. § 1331.

9.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims.

10.    This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

11.    The Detroit Club is a nearly 130 year old historic club that operates in the City of Detroit which has entertained Presidents, celebrities, and other dignitaries.

12.    In 2014, the Detroit Club was purchased by Emre Uralli and Defendant Lynn Uralli ("Uralli").

13.    On information and belief, the current Detroit Club is operated by Defendant Detroit Club Management Corp (herein "The Detroit Club").

14.    The Detroit Club is a historically private club (currently open to the public) which consists of a restaurant, bar, spa, and several rooms for overnight accommodations.

15.     Generally, the Detroit Club has a dress code requiring patrons to dress either "Smart Casual" or "Business Casual." However, this dress code was typically not enforced in relation to overnight guests as they were checking into their rooms.

16.     In August 2017, Uralli contracted Regina Peters (now Regina Djordjevic)("Peters") to perform the initial onboarding for the Detroit Club. *(Affidavit of Regina Djordjevic* attached as *Exhibit A*). Peters was employed with the Detroit Club, directly working for Uralli and her husband, co-owner Emre Uralli from August 2017 until April 18, 2018. *Exhibit A*

17.     According to Peters, Uralli frequently questioned or outright rejected several quality candidates recommended by Peters due to their race or being members of other protected classes. *Exhibit A*

18.     In one instance, Peters recommended a skilled Latino woman who had previously worked at the nearby Foundation Hotel for a hostess position. Uralli informed Peters "she is cute but is a little too Mexican trashy." *Exhibit A* Similarly, Peters recruited a qualified African American spa manager candidate who Uralli stated was "too black." *Exhibit A*

19.     As perhaps the most egregious example of racism, Uralli told Peters that the two African American hostesses in the Club's "Grill Room" look like "ni***r pigs" and "smell like garbage" because of the lotion they were using. *Exhibit A*

20.     Similarly, Uralli referred to the Club's minority kitchen staff as "gangbangers" and that she was going to withhold pay from them because they were "basically going to steal stuff on their way out anyways." *Exhibit A*

21.     According to Peters, Uralli also had issues with African American clientele. In one instance, an African American client, a radio personality, was with Peters on a site visit of the Club. Uralli stated that she was uncomfortable with the individual "lingering in the club" and said they needed to "advertise to a higher-profile clientele." *Exhibit A*  Similarly, an African American entrepreneur recorded a tour of the club and interview of Peters on his professional Facebook page. Uralli demanded it be deleted as she didn't want to promote the Club to "that group of people" or have "that crowd think they could come into the club", referring to African Americans. *Exhibit A*

22.     Peters would frequently notify Uralli that it was entirely inappropriate the way she spoke about minorities including pleas that Uralli "can't say things like that." However, according to Peters, Uralli did not change her ways at all. *Exhibit A*

23.     Ultimately, Peters resigned in April 2018. Following her resignation, Uralli subjected Peters to a series of personal and professional threats. *Exhibit A* Furthermore, as discussed herein, the Club and Uralli's discriminatory practices continued.

24.     Plaintiff Miya Shani Hooks ("Plaintiff Hooks") was hired by the Detroit Club to work as a server in the club's restaurant, Bohemia in or around September 2021.

25.     Plaintiff Hooks is African American.

26.     Plaintiff Hooks was interviewed and hired by an individual named Charlie Howard ("Howard"). Shortly after her hire, Howard told Plaintiff Hooks that Uralli questioned him whether Hooks was "black or black black" prior to hiring her.  Further, that Uralli told Howard that she was "tired of him hiring people who aren't white." Plaintiff Hooks was appalled.

27.     Uralli was out of town for the initial period following Plaintiff Hook's hire. During this period, Plaintiff Hooks was warned that Uralli is a "terror" and disrespectful towards minorities and that she would be fired if she questioned her.  Further, Plaintiff was informed that Uralli had threatened folks who challenged her with "never being able to find work" in metro Detroit again. Upon Uralli's returned, the warnings proved correct.

28.     Upon Uralli's return, Plaintiff Hooks witnessed Uralli, as well as Hooks' supervisor "Colleen" enforce the dress code disparately towards African American patrons in ways they routinely ignored for Caucasian patrons[1]. Likewise, several African American patrons complained directly to Plaintiff about how rude Uralli was towards them. Plaintiff Hooks did her best to diffuse the situation. However, each complaint she submitted to her supervisor went ignored.

---

[1] Following the initial filing of the present lawsuit, Colleen called Plaintiff Hooks and apologized for her complacently in Uralli's racism and for not standing up for Hooks. According to Colleen, the racism only increased following Hooks' termination and, as a result, she left the Detroit Club in December 2021.

29.     In November 2021, Plaintiff Hooks witnessed an incident in which an African American woman entered the Club to dine at Bohemia with her two sons but were stopped by Uralli and Managing Director Chance Armstrong ("Armstrong") regarding the dress code. Uralli made a scene and berated the African American family. At the time, there were two tables of Caucasian individuals similarly dressed. Plaintiff Hooks notified Armstrong that she believed the treatment to be racist as there was no issues when the Caucasian tables wore the same thing. Armstrong dismissed Plaintiff Hook's complaint. After Plaintiff Hooks spoke with Uralli who also dismissed her complaint of disparate treatment against the African American family saying they were wearing "urban street clothes."

30.     In another incident, Plaintiff Hooks witnessed a group of African American gentleman enter—one of which wearing a blazer over a designer sweatshirt. Uralli sent Armstrong to tell them they could not enter due to the dress code.  Less than a half hour later, Plaintiff witnessed a Caucasian individual enter and served while wearing nylon Nike tear-away pants.

31.     On November 18, 2022, Plaintiff Hooks was asked to come into work on her day off.  Upon her arrival, she was informed by another server, Michael, that he had just witnessed an incident of racism regarding the dress code.  Plaintiff Hooks met with Armstrong to discuss the ongoing racism.  During the conversation, Hooks stated that she has now witnessed and reported racism at the Detroit Club three times, but the

management keeps calling her delusional. Armstrong brushed off the complaint and said "I don't know what to say. I am just a messenger." Ultimately, this proved to be Plaintiff Hooks' final shift.

32.     On November 24, 2021, Plaintiff Hooks was terminated, allegedly for "threatening" Uralli.

33.     Following her termination, Plaintiff Hooks obtained employment as a server in another Detroit restaurant which was visited by Uralli. Uralli stated to Plaintiff Hooks "how did you get a job here?" Hooks responded, "I guess I did something right." Uralli responded "not for long", threatening to try to get Plaintiff Hooks fired.

34.     Plaintiff Charles Lisée ("Plaintiff Lisée") began his employment at the Detroit Club in November 2021 as a Bartender in the club's "Library Bar."

35.     Similar to Hooks, Plaintiff Lisée began to notice disparate treatment towards the club's African American patrons compared to Caucasian guests.

36.     Notably, Plaintiff Lisée has a degree in urban studies and took courses focusing on racism and classism in America, as well as Detroit.

37.     Plaintiff Lisée noticed several African American guests who were frustrated by being harassed or "shaken down" by the Club regarding its dress code or other matters.

38.     In February 2022, Plaintiff Lisée had an African American patron complain to him that she and her sister were humiliated by the Detroit Club's Front

Office Manager Defendant Suzette Daye ("Daye") for no reason at all. On information and belief these individuals also submitted a complaint to the Detroit Club's membership director, Rema.

39.    After the event, Plaintiff Lisée met with his supervisor, Managing Director Armstrong and expressed his concerns regarding the Detroit Club's treatment of African Americans who visit. Armstrong agreed with Lisée that there was a problem but stated that he was "unsure how he would address it."

40.    On or around March 17, 2022, Plaintiff Maria Victoria Ferrer ("Plaintiff Ferrer") was hired by the Detroit Club as a front desk agent.

41.    Plaintiff Ferrer is a Latino woman.

42.    As a front desk agent, Plaintiff Ferrer was supervised by Defendant Daye.

43.    As with the others, Plaintiff Ferrer noticed Daye disparately enforcing the Detroit Club's dress code against African Americans early into her employment with Defendants.

44.    Furthermore, Daye made several comments to Plaintiff Ferrer about African American patrons not being dressed properly despite being dressed to the Detroit Club's code.

45.    Daye would also jokingly refer to Plaintiff Ferrer as being Mexican even though she explained that, although she is Latino, she is not Mexican.

46.     In or around early April 2022, an incident occurred when Plaintiff Ferrer, pursuant to customary practices, allowed an African American couple to check into their room while out of dress code. When the couple came back down from their room, Plaintiff explained the dress code to which the couple stated that they were local and would obtain proper attire and return. Despite the matter being resolved, Daye approached and asked the lady of the couple if there was a problem. The lady replied she was unhappy with dress code. Daye responded by aggressively asserting "we have a dress code here and if you don't like it then you can leave" directly in the woman's face. The woman asked Daye to back away from her face to which Daye refused, responding that she was "fine right here." After, the African American couple sought to leave permanently and for a refund. Daye acted eerily pleased after throwing out this African American couple.

47.     Prior to that point, Plaintiff Ferrer observed several Caucasian couples check into overnight rooms without adhering to the dress code in the presence of Daye without any issue.

48.     The following day, Plaintiff Ferrer notified Daye that she believed her actions amounted to racial harassment of the couple. Daye became defensive and told Plaintiff to speak with the owner, Uralli.

49.     Plaintiff Ferrer met with Uralli who brushed off Plaintiff Ferrer's allegations. Additionally, Uralli questioned Plaintiff Ferrer "do you think your black?"

and then stated that Plaintiff Ferrer seemed defensive and sensitive about racial discrimination. Uralli then asked Plaintiff Ferrer what she thought should be done. Plaintiff responded that Uralli is the owner, and it is up to her to do something.  On information and belief, nothing was done.

50.    On April 8, 2022, Plaintiff Lisée saw two African American patrons enter the Detroit Club, one of which wearing a wave cap, to check into the Club's hotel. Shortly after their arrival, Lisée heard them berated by Daye then saw them angerly walking down the sidewalk after they refused to check in due to their interaction with Daye.  Lisée informed Plaintiff Ferrer about the incident and they both agreed these racist acts were becoming overwhelming.

51.    On or around April 9, 2022, prior to arriving at work, Plaintiff Lisée emailed Armstrong an article about the repercussions faced by another racist local employer. *(Exhibit B)* After, Plaintiff Lisée met with Armstrong and stated that, as a gay man, he knows what it is like to be discriminated against and that he can't be part of an organization that perpetuates racism. Plaintiff Lisée notified Armstrong of several discriminatory incidents which he witnessed and that the Detroit Club's management was doing nothing to address ongoing racism. Armstrong implored  Lisée to stay, again acknowledging that there was a problem but this time promising that they were "looking at different options" as to how to address the Club, and Daye's discriminatory actions.

During the conversation, Armstrong stated that if Lisée thought Daye was bad, he should have seen the individual she replaced.

52.    In another incident, a very well dressed African American woman wearing a leopard print suit approached the desk and asked about a "Mr. Brown."  As before, Daye aggressively approached the woman and exclaimed "we don't know a Mr. Brown or have a Mr. Brown in here."  The woman stated that she was going to wait because she was certain he was there. Daye stormed off visibly angry.  After, Mr. Brown, a guest and prominent political candidate, greeted the woman. The woman vocalized her anger with the discriminatory treatment she received from Daye.  Plaintiff Ferrer was able to diffuse the situation by asking her if she would like for Plaintiff Ferrer to take her coat while she waited. After, Mr. Brown rightfully inquired what was going on and why his guest was treated in that manner. On information and belief, the complaints of the African American woman and Mr. Brown were not investigated.

53.    On April 22, 2022, another incident arose when an African American couple was checking into their room. The African American man noted that he is a musician and asked if he would be able to do a short video in his room. Daye jumped into the conversation saying that they are not allowed to have more than two individuals in the room. Plaintiff Ferrer was shocked as she had witnessed Daye state otherwise to Caucasian guests. After, the African American woman stated that she would leave the room so that the camera man could be the second individual.

54.     After the incident, Plaintiff Ferer reminded Daye that the previous week Daye informed a Caucasian couple that it was ok for them to have another Caucasian couple join them in their room.  Plaintiff Ferer asked Daye why she didn't inform the Caucasian couple that it was against the rules? Daye claimed she did not remember the incident.

55.     On April 23, 2022, the Detroit Tigers were scheduled to play a day game. As a result, Daye notified Plaintiff Ferer that the club was being relaxed about the dress code.

56.     An African American couple entered the club out of dress code, but the to the same level as Caucasian patrons.  Uralli noticed the couple and exclaimed to Plaintiff Ferer "are they guests? So, you're letting street rats come in?" The African American man, Kody Hook, heard Uralli's comments and approached her stating that he heard her comments and that she lost a potential new member[2]. After, Plaintiff Ferer objected to the clearly racist comment to which Uralli responded by berating her.

57.     After Plaintiff Ferer finished her shift, Armstrong asked to walk Plaintiff to her vehicle.  During the walk, Plaintiff stated that there have been so many racial incidents that have made her uncomfortable. Armstrong responded, "then I think we

_____

[2] Kody Hook later left a negative review regarding the incident on google reviews labeling Uralli as a "racist a** owner." *Exhibit C* Within the review, Mr. Hook also states that Uralli referred to him and his partner "street rats." Notably, the Detroit Club's owner, presumably Uralli, denied that this individual ever even stepped foot in the club. *Exhibit C*

should call it." Plaintiff was confused. Armstrong elaborated that Uralli had pulled him aside and asked him to terminate Plaintiff.

58.     On April 25, 2022, Plaintiff Lisee resigned from his position after learning of Plaintiff's termination following her complaint regarding the ongoing racism at the club. Lisee felt he had no choice but to resign as nothing was being done to address the ongoing discriminatory practices previously reported.   As part of his resignation, Plaintiff Lisée submitted a resignation letter outlining the ongoing racism he witnessed at the Detroit Club. *Exhibit D*

59.     On April 26, 2022, Uralli text messaged Plaintiff Lisee threatening to "destroy him." *Exhibit E* Uralli also stated that Lisee should call Plaintiff Ferrer before Uralli had her "put behind bars." *Exhibit E* Uralli also threatened to go after Plaintiff Ferrer and Lisee's real estate licenses[3]. *Exhibit E*

60.     In the texts, Uralli also instructed Plaintiff Lisée to tell his "little friend" (meaning Ferrer) to have Kody, the African American patron who alleged discrimination, to remove his negative review of the Detroit Club. *Exhibits C and E* Within the message, Uralli indicated that she investigated Kody's background through a criminal background check and used it to dismiss his credibility. *Exhibit E* Further, Uralli stated that someone would be checking every hour to confirm that the negative review was removed. *Exhibit E*

---

[3] Both Plaintiffs Ferrer and Lisee also work as real-estate agents.

61.     On information and belief, each Plaintiff was replaced by a Caucasian individual.

## COUNT I
## RETALIATION - 42 U.S.C. § 1981
(*Against all Defendants*)

62.     All preceding paragraphs are incorporated by reference.

63.     Each Plaintiff had a contractual employment relationship with Defendant Detroit Club Management Corp.

64.     Defendants Suzette Daye and Lynn Uralli are agents of Defendant Detroit Club Management Corp. with supervisory power over the Plaintiffs.

65.     Plaintiffs engaged in activity protected by 42 U.S.C. § 1981 when they complained of the unequal and discriminatory treatment African American patrons, guests, and invitees were subjected to compared to Caucasians.

66.     During the course of each Plaintiffs' employment with Defendants, Defendants violated Plaintiffs' rights by depriving them of their right to the enjoyment of all benefits, privileges, terms and conditions of employment in violation of 42 U.S.C. § 1981(b), *as amended.*

67.     Defendants retaliated against Plaintiffs due to this protected activity.

68.     Defendants terminated Plaintiffs Ferrer and Hooks in retaliation of their protected activity.

69.     Defendants constructively discharged Plaintiff Lisee in retaliation of his protected activity.

70.     Defendant Uralli has threatened to interfere with each Plaintiff's professional career, as a real estate agents and as a server, in retaliation for their protected activity.

71.     Uralli threatened to seek criminal prosecution of Plaintiffs Ferrer and/or to "put her behind bars" in retaliation for her protected activity.

72.     Defendants' termination and/or constructive termination of Plaintiffs' employment on this basis violates 42 U.S.C. § 1981.

73.     As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT II
## RETALIATION - ELLIOT-LARSEN CIVIL RIGHTS ACT,
## M.C.L. § 37.2101 *et. seq.*
### (*Against all Defendants*)

74.     All preceding paragraphs are incorporated by reference.

75.     At all relevant times, Plaintiffs and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

76.     Plaintiffs engaged in protected activity when they complained of the unequal and discriminatory treatment African American patrons, guests, and invitees were subjected to compared to Caucasians.

77.     Defendants retaliated against Plaintiffs due to this protected activity.

78.     Defendants terminated Plaintiffs Ferrer and Hooks in retaliation of their protected activity.

79.     Defendants constructively terminated Plaintiff Lisee in retaliation of his protected activity.

80.     Defendants have threatened to interfere with Plaintiffs' professional careers in retaliation for her protected activity.

81.     Defendants threatened to seek criminal prosecution of Plaintiff Ferrer and/or to "put her behind bars" in retaliation for her protected activity.

82.     As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT III**
**RACIAL DISCRIMINATION (HOSTILE WORK ENVIRONMENT)**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 _et. seq._**
(_Against all Defendants_)

83.     All preceding paragraphs are incorporated by reference.

84.     At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

85.     Plaintiffs Hooks and Ferrer are members of protected classes based on their race, African American and Latino.

86.     Regardless of each Plaintiff's race or heritage, each Plaintiff has a right to work in a workplace free from racial discrimination.

87.     Defendants frequently made racist comments and held African American patrons to a different standard than Caucasian patrons.

88.     Defendants were objectively hostile to African American patrons.

89.     On information and belief, Uralli inquired whether Plaintiff Hooks was "black or black black" upon her hire.

90.     When Plaintiff Ferrer notified Uralli of the racially hostile treatment to African American patrons that she perceived, Uralli responded "[d]o you think you're black?" (Plaintiff is Latino)

91.     As discussed earlier herein, the Plaintiffs witnessed multiple incidents of racism, of which they reported. However, their reports fell upon deaf ears.

92.     The racially discriminatory harassment and treatment witnessed by the Plaintiffs depriving them of a diverse work environment was done by Defendants' owner, as well as their direct supervisor(s).

93.    The racially discriminatory work environment impacted the terms and conditions of each Plaintiff's employment with Defendants.

94.    Defendants conduct was severe and/or pervasive enough to create a hostile work environment for the Plaintiff.

95.    Plaintiffs made Defendants aware of the racially hostile work environment and they terminated and/or constructively discharged them rather than resolve the issues.

96.    Plaintiff Ferrer was informed she was "not a good fit" to be employed with Defendants for associating with and supporting the equal treatment of African Americans.

97.    Plaintiff Hooks was informed she was delusional for suggesting racism exists at the club.

98.    The work environment was objectively hostile for the Plaintiffs.

99.    Defendants were aware of the racially hostile work environment and abuse Plaintiff was facing and failed to act.  Rather than resolve these issues, Defendants terminated Plaintiff.

100.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the

ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT IV
## RACIAL DISCRIMINATION - 42 U.S.C. § 1981
(*Against all Defendants*)

101.   All preceding paragraphs are incorporated by reference.

102.   Plaintiff Ferrer is a member of a protected class as a Latino.

103.   Plaintiff Hooks is a member of a protected class as an African American.

104.   Regardless of each Plaintiff's race or heritage, each Plaintiff, including Lisee, was targeted for associating with and supporting the equal treatment of African Americans.

105.   Defendants discriminated against and terminated and/or constructively discharged each Plaintiff for associating with and supporting the equal treatment of African Americans.

106.   Defendants discriminated and terminated Plaintiffs Ferrer and Hooks due to their race.

107.   Defendant Uralli has threatened to interfere with each Plaintiff's professional careers due to their race and/or their association with African Americans.

108.   Uralli threatened to seek criminal prosecution of Plaintiffs Ferrer and/or to "put her behind bars" due to her race and association with African Americans.

109.     As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

**COUNT V**
**RACIAL DISCRIMINATION**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***
(*Against all Defendants*)

110.     All preceding paragraphs are incorporated by reference.

111.     Plaintiff Ferrer is a member of a protected class as a Latino.

112.     Plaintiff Hooks is a member of a protected class as an African American.

113.     Regardless of each Plaintiff's race or heritage, each Plaintiff, including Lisee, was targeted for associating with and supporting the equal treatment of African Americans.

114.     Defendants discriminated against and terminated and/or constructively discharged each Plaintiff for associating with and supporting the equal treatment of African Americans.

115.     Defendants discriminated and terminated Plaintiffs Ferrer and Hooks due to their race.

116.    Defendant Uralli has threatened to interfere with each Plaintiff's professional careers due to their race and/or their association with African Americans.

117.    Uralli threatened to seek criminal prosecution of Plaintiffs Ferrer and/or to "put her behind bars" due to her race and association with African Americans.

118.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Honorable Court:

a.    Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of § 1981 and ELCRA;

b.    Award Plaintiffs all lost wages and benefits, past and future, to which she is entitled;

c.    Award Plaintiffs appropriate equitable relief;

d.    Award Plaintiffs compensatory damages;

e.    Award Plaintiffs punitive damages;

f.    Award Plaintiffs reasonable attorney fees, costs and interest; and

g.    Award such other relief as this Court deems just and proper.

23

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

DATE:   July 28, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARIA VICTORIA FERRER
CHARLES LISÉE,** and
**MIYA SHANI HOOKS,**

          Plaintiffs,

vs.

**DETROIT CLUB MANAGEMENT
CORP** d/b/a **THE DETROIT CLUB**,
**SUZETTE DAYE**, and **LYNN URALLI,**
jointly and severally,

          Defendants.

Case No. 22-cv-11427

Hon. Linda V. Parker
Magistrate Judge Kimberly G. Altman

_____/

| | |
|---|---|
| Jack W. Schulz (P78078) | Gregory M. Meihn (P38939) |
| SCHULZ LAW PLC | Matthew T. Wise (P76794) |
| PO Box 44855 | GORDON REES SCULLY |
| Detroit, MI 48244 | MANSUKHANI |
| (313) 246-3590 | Attorneys for Defendants |
| jackwschulz@gmail.com | 37000 Woodward Avenue, Suite 225 |
| *Attorneys for Plaintiff* | Bloomfield Hills, MI 48304 |
| | (313) 426-9815 \| Fax: (313) 406-7373 |
| | gmeihn@grsm.com |
| | mwise@grsm.com |

_____/

## <u>DEMAND FOR TRIAL BY JURY</u>

      Plaintiffs Maria Victoria Ferrer, Charles Lisee, and Miya Shani Hooks, hereby

demand for a trial by jury.

                          Respectfully submitted,

                          By: /s/ Jack W. Schulz

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

DATE: July 28, 2022