UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA BAUGH (née FERRER), CHARLES LISÉE, and MIYA SHANI HOOKS,

Plaintiffs,

v.

Case No. 22-cv-11427
Honorable Linda V. Parker

DETROIT CLUB MANAGEMENT CORP., d/b/a THE DETROIT CLUB, SUZETTE DAYE, and LYNN KASSOTIS (née URALLI),

Defendants.
________________________________/

**OPINION AND ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S PETITION FOR ATTORNEY'S FEES AND COSTS (ECF NO. 128) AND (2) DENYING DEFENDANTS' MOTION FOR RECONSIDERATION (ECF NO. 112)**

## I. Introduction

This matter is before the Court on Defendants' motion for reconsideration, filed May 22, 2026 (ECF No. 112), of an opinion and order filed on October 31, 2024 (ECF No. 72). It also is before the Court on Plaintiffs' fully-briefed petition for an award of attorneys' fees and costs. (ECF Nos. 128, 132, 142.) Plaintiffs filed their petition following a jury verdict in their favor on claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). All three statutes grant district courts

the discretion to award a "prevailing party" the fees and costs incurred in litigation. *See* 42 U.S.C. § 2000e-5(k); Mich. Comp. Laws § 37.2802.

## II. Background

Earlier in this matter, the parties filed cross-motions for summary judgment which narrowed the claims for trial. (*See* ECF No. 75.) In that decision, the Court dismissed several claims against Defendants and granted summary judgment to Plaintiff Charles Lisée ("Lisée") on his § 1981, Title VII, and ELCRA retaliation claims against Defendants Detroit Club Management Corp. ("The Detroit Club") and Lynn Kassotis (née Uralli) ("Uralli").

As relevant to Defendants' motion for reconsideration, the Court also considered a motion for sanctions filed by Plaintiffs related to documents Defendants failed to produce, which Plaintiffs then received through a third party who worked at The Detroit Club. (*See* ECF No. 62.) While the Court denied Plaintiffs' request for more severe sanctions as a result of Defendants' discovery violations, which the Court found to be willful, it awarded Plaintiffs the fees and costs for bringing their motion, responding to Defendants' previously filed summary judgment motions, and pursuing Plaintiffs' own summary judgment motion without the aid of the materials.[1]

[1] Plaintiffs thereafter filed a petition for the fees and costs expended, which was fully briefed. (ECF Nos. 64, 67, 68.) But due to the Court's oversight, no specific

At the trial, which began on June 11, 2026, the jury was tasked with deciding: (a) the amount of damages, if any, Lisée was entitled to against the Detroit Club and Uralli; (b) whether Plaintiff Miya Shani Hooks ("Hooks") proved her hostile work environment, race discrimination, and retaliation claims against The Detroit Club and Uralli and, if so, the damages to which she was entitled; and (c) whether Plaintiff Maria Victoria Baugh (née Ferrer) ("Ferrer") prevailed on race discrimination and retaliation claims against The Detroit Club, Uralli, and Defendant Suzette Daye ("Daye") and, if so, the damages to which she was entitled. (*See* ECF No. 125.) The jury found in favor of Hooks and Ferrer on all of their claims and awarded damages as follows:

| **Lisée** | **Detroit Club** | **Uralli** | |
|---|---|---|---|
| Non-pecuniary damages | $100,000 | $500,000 | |
| Punitive damages | $335,000 | $750,000 | |
| **TOTAL** | **$435,000.00** | **$1,250,000.00** | |
| | | | |
| **Hooks** | **Detroit Club** | **Uralli** | |
| Lost Wages | $7,490.08 | $20.00 | |
| Non-pecuniary damages | $200,000 | $750,000 | |
| Punitive damages | $350,000 | $1,000,000 | |
| **TOTAL** | **$557,490.08** | **$1,750,020.00** | |
| | | | |
| **Ferrer** | **Detroit Club** | **Uralli** | **Daye** |

sanctions award ever issued. Those fees and costs requested as sanctions (*see* ECF No. 64 at PageID.6860-62) are now included in Plaintiffs' current fee petition (*see* ECF No. 128-4 at PageID.13437-41). Thus, the current award now includes the overdue sanctions award.

| | | | |
|---|---|---|---|
| Lost Wages | $3,000 | $0 | $0 |
| Non-Pecuniary | $250,000 | $500,000 | $2,500 |
| Punitive | $500,000 | $1,000,000 | $5,000 |
| **TOTAL** | **$753,000.00** | **$1,500,000.00** | **$7,500.00** |

(*Id.*) Plaintiffs now seek an award of attorneys' fees of $416,965 and costs of $10,814. (ECF No. 128.)

In their response, Defendants contest whether Plaintiffs are "prevailing parties" as a number of their claims against Defendants were dismissed on summary judgment. (ECF No. 132.) Defendants also challenge the hourly rates sought by Plaintiffs' counsel Jack W. Schulz and Herbert A. Sanders. (*See id.*) Defendants argue that the hours billed by Mr. Schulz and Mr. Sanders are excessive and should be reduced due to the following: (a) vague entries, (b) block billing, (c) billing in large increments despite billing in tenths of an hour, (d) billing for administrative and paralegal tasks, and (e) "[g]enerally excessive billing." (*See id.*) Defendants do not challenge the costs Plaintiffs seek.

For the reasons discussed below, the Court is denying Defendants' motion for reconsideration and granting in part and denying in part Plaintiffs' petition for attorneys' fees and costs.

## III. Defendants' Motion for Reconsideration (ECF No. 112)

As indicated, on May 22, 2026, Defendants filed a motion for reconsideration as to the Court's sanctions ruling on October 31, 2024. Although Defendants cite Federal Rule of Civil Procedure 60(b) as the basis for their motion,

the rule applies only to "final" orders." *See* Fed. R. Civ. P. 60(b); *Payne v. The Courier-Journal*, 193 F. App'x 397, 400 (6th Cir. 2006) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1277 (6th Cir. 1991)). The Court's ruling on Plaintiffs' motion for sanctions was a nonfinal order.

Defendants seem to recognize this because, despite citing Rule 60(b) in the motion, they rely on the standard in Eastern District of Michigan Local Rule 7.1(h)(2) in arguing for reconsideration. (*See* ECF No. 112 at PageID.12692 (contending that reconsideration is warranted based on "significant irregularities, omissions[,] and palpable defects, that misled the Court and the Defendants, and that correcting those defects would result in a different disposition of the matter").

Motions for reconsideration pursuant to Local Rule 7.1(h) must be filed within 14 days after entry of the order at issue. E.D. Mich. LR 7.1(h)(2). Defendants' motion comes 554 days too late. Even if properly filed as a Rule 60(b) motion, such motions "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The motion was filed more than a year after the order and not within "a reasonable time."

For these reasons, the Court denies Defendants' motion for reconsideration.

## IV. Plaintiffs' Petition for Attorneys' Fees and Costs

### A. Legal Standard

Section 1981, Title VII, and ELCRA, grant district courts the discretion to award reasonable attorney's fees and costs to the "prevailing party." 42 U.S.C. § 2000e-5(k); Mich. Comp. Laws § 37.2802; *see also Meyer v. City of Ctr. Line*, 619 N.W.2d 182, 191 (Mich. Ct. App. 2000) (quoting *Dresselhouse v. Chrysler Corp.*, 442 N.W.2d 705, 711 (Mich. Ct. App. 1989)) (explaining that "[a] party must be a 'financially successful or prevailing party' to be entitled to an award of fees and costs under [§ 37.2802]").

Only "reasonable" attorney fees and costs are recoverable. "[A] reasonable attorney's fee award is one that is adequate to attract competent counsel but . . . [that does] not produce windfalls to attorneys." *Blum v. Stevenson*, 465 U.S. 886, 893, 897 (1984) (internal quotation marks and citation omitted); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (cleaned up) (explaining that the goal of the fee-shifting statutes is "to induce a capable attorney to undertake the representation of a meritorious civil rights case" . . . "not to provide a form of economic relief to improve the financial lot of attorneys"); *Adcock-Ladd v. Sec'y of Treasury*, 277 F.3d 343, 349 (6th Cir. 2000). The starting point for calculating a reasonable fee award is assessing the "lodestar." *Adcock-Ladd*, 277 F.3d at 349 (quoting *Hensley v. v. Eckerhart*, 461 U.S. 424, 433 (1983));

*Smith v. Khouri*, 751 N.W.2d 472, 479-80 (Mich. 2008). "There is a 'strong presumption that the lodestar figure . . . represents a 'reasonable' fee." *Barrow v. City of Cleveland*, 773 F. App'x 254, 268 (6th Cir. 2019) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (*Delaware Valley I*)).

The lodestar is "the proven number of hours reasonably expended on the case by an attorney, multiplied by [the attorney's] court-ascertained reasonable hourly rate." *Id.* (quoting *Hensley*, 461 U.S. at 433). It is the movant's burden to establish entitlement to an award, *Fox v. Vice*, 563 U.S. 826, 838 (2011), including showing that the requested hourly rate(s) and hours billed are reasonable, *see Blum v. Stevenson*, 465 U.S. 886, 897 (1984); *see also Hensley*, 461 U.S. at 437. To that end, the party seeking an award must "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. The Supreme Court has instructed reviewing courts to exclude fees that were not "reasonably expended[.]" *Id.* at 434.

After calculating the lodestar, the court may adjust the fee award in light of relevant factors. *See Adcock-Ladd*, 227 F.3d at 349 (citing *Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999)). The Sixth Circuit has identified twelve:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6)

> whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 349 n.8 (quoting *Reed*, 179 F.3d at 471-72 n.3). However, these factors constituted a separate balancing test used by courts to assess a reasonable attorney fee, "before the lodestar became 'the guiding light of [the Supreme Court's] fee shifting jurisprudence.'" *Murphy v. Smith*, 583 U.S. 220, 227 (2018) (quoting *Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

Since the adoption of the lodestar as the presumptively reasonable fee, *Delaware Valley I*, 478 U.S. at 565, the Supreme Court has warned lower courts not to place "undue reliance" on these factors, finding that most are already subsumed in the lodestar calculation,[2] *see Perdue*, 559 U.S. at 553 (citing *Delaware Valley I*, 478 U.S. at 566); *see also id.* (citations omitted) (reiterating "that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation"). Nevertheless, the Supreme Court has indicated that "[t]he lodestar method was never intended to be conclusive in all circumstances."

[2] For example, the novelty and complexity of a case "presumably are fully reflected in the number of billable hours recorded by counsel" and the hours determined to be "reasonable." *Perdue*, 559 U.S. at 553 (citation omitted). Similarly, the quality of an attorney's performance is part of fixing the attorney's reasonable hourly rate. *Id.*

*Perdue*, 559 U.S. at 553. "[T]he strong presumption that the lodestar figure is reasonable . . . may be overcome in those rare circumstances in which [it] does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Id.* at 553-54.

Moreover, the presumption is dependent on counsel using "billing judgment." *Hensley*, 461 U.S. at 434. As the Supreme Court explained in *Hensley*: "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id*. (quotation marks and citation omitted).

Notably, when assessing whether counsel has exercised billing judgment, district courts need not act as "green-eyeshade accountants" who attempt to "achieve auditing perfection." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox*, 563 U.S. at 838). Neither Supreme Court nor Sixth Circuit precedent require courts "to cull through the records and conduct a[] line-item review." *Id.* at 713 n.11. Rather, district courts "must simply . . . do 'rough justice.'" *Id.* at 703. (quoting *Fox*, 563 U.S. at 838). "This

means that the court can rely on estimates based on its 'overall sense of a suit.'" *Id*. (quoting *Fox*, 563 U.S. at 838).

Attorney fee petitions should not "generate 'satellite' disputes over fees" or "prompt 'a second major litigation[.]'" *McQueary v. Conway*, 614 F.2d 591, 598 (6th Cir. 2010) (first quoting *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992); then quoting *Hensley*, 461 U.S. at 437).

### B. Prevailing Party

Defendants first take issue with whether Plaintiffs are "prevailing parties." Defendants maintain that Plaintiffs have not yet prevailed because no final judgment has been entered. Next, they challenge Plaintiffs' "prevailing party" status given that a number of Plaintiffs' claims were disposed of at summary judgment. At most, Defendants argue, because of their "limited success," Plaintiffs' requested fees should be reduced.

Defendants cite no authority in support of their assertion that a fee request is premature if made before a final judgment is entered, or that a final judgment is a prerequisite to establishing prevailing-party status. The jury's verdicts—at least absent a motion for judgment as a matter of law or for new trial, which were never sought here—established Plaintiffs' "prevailing" status. Further, Plaintiffs are prevailing parties even if they did not succeed on all of their claims.

"Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (quoting *Hensley*, 461 U.S. at 433). Stated differently, "[t]o be considered a prevailing party, a litigant must have 'received at least some relief on the merits of his claim' amounting to 'a court-ordered change in the legal relationship between the plaintiff and the defendant.'" *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001)) (brackets omitted).

As the Sixth Circuit recently reminded this Court, it is "wrong to discount [the plaintiff]'s success just because [the plaintiff] did not prevail on each of [the plaintiff]'s 'alternative legal grounds.'" *Pianko v. Gen. R.V. Ctr., Inc.*, No. 25-1659, 2026 WL 1961921, at *4 (July 7, 2026) (citing *Hensley*, 461 U.S. at 435). Instead, as the Supreme Court explained in *Hensley*, the "results obtained" are simply one factor in deciding whether a fee award should be adjusted upward or downward. 461 U.S. at 434. But as the *Hensley* Court advised, where "the plaintiff's claims for relief [] involve a common core of facts or [are] based on related legal theories[,]" [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-

by-claim basis." 461 U.S. at 435. In that instance, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*.

The *Hensley* Court further advised that, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id*. Plaintiffs undoubtedly obtained "excellent results" on the claims that succeeded summary judgment and on which they prevailed at trial. The Court finds that they are "prevailing parties" entitled to "all hours reasonably expended on the litigation[.]" *Id.*

**C. Reasonable Hourly Rates**

Plaintiffs ask the Court to calculate the lodestar amount using hourly billing rates of $450 and $500 for Mr. Schultz and Mr. Sanders, respectively. They rely on the State Bar of Michigan's 2023 Economics of Law Report (hereafter "survey data") to demonstrate the reasonableness of these billing rates. (*See* ECF No. 128-3.) Plaintiffs point out that the hourly rates sought fall within the 75th-95th percentile for attorneys with similar years in practice (12 years for Mr. Schultz and more than 30 years for Mr. Sanders), attorneys practicing in downtown Detroit (where both attorneys practice and where the trial occurred), and attorneys practicing employment law.

District courts frequently look to the survey data to determine reasonable hourly rates, and they utilize the relevant average billing rates. *See, e.g., Clements v. Prudential Protective Servs., LLC*, 100 F. Supp. 3d 604, 617 (E.D. Mich. 2015) (citing cases). The Sixth Circuit has approved this practice. *Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 500-02 (2006). However, the average rates, rather than a higher percentile, are more appropriately applied as the fee-shifting statutes "only guarantee[] [prevailing parties] competent counsel, not the best and/or most expensive counsel." *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 948 (E.D. Mich. 2005); *see also Coulter*, 805 F.2d at 148-49 ("Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate."); *Robinson v. City of Edmond*, 160 F.3d 1275, 1288 (10th Cir. 1998) ("Fee-shifting statutes . . . do not permit an award of fees charged by 'the best attorneys that money can buy' if those rates exceed the prevailing market rate for similar services.").

According to the survey data, the average hourly rate in 2023 for plaintiff-side employment lawyers in Michigan was $412. (ECF No. 108-3 at PageID.2027.) The mean was $454 for lawyers with offices in downtown Detroit, or when the case was tried there. (*Id.* at PageID.13414.) For lawyers licensed as long as Mr. Schulz and Mr. Sanders, the mean hourly rates are $330 and $369,

respectively. (*Id*. at PageID.13413.) The Court finds $450 to be a reasonable rate for *both* attorneys given these figures. It will adjust Plaintiffs' lodestar calculation accordingly.

**D. Reasonable Hours**

As set forth earlier, Defendants raise several objections to the hours billed by Plaintiffs' counsel. The Court finds no merits to those objections. The billing records of Plaintiffs' counsel are not vague and reflect, at most, only a few entries that might constitute block billing. The Court cannot conclude that hours are billed for work a paralegal or administrative staff usually would perform.

Nor can the Court conclude that counsel overbilled because there are few entries for small increments or based on the work described. And while Defendants may "wager" that Mr. Sanders could have read a court order, for which he billed twelve (.2) minutes, in less time (*see* ECF No. 132 at PageID.13824), this Court declines to gamble on whether it would or should have taken an attorney five minutes as opposed to twelve to complete a task. "[C]ourts do not lightly second-guess the hours worked by the attorney in the case: 'Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Heinkel ex rel. Heinkel v. Sch. Bd. of Lee Cnty.*, No. 2:04-cv-184, 2007 WL 2757366, at *6 (M.D.

Fla. Sept. 20, 2007) (quoting *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988)); *see also Roth Grading, Inc. v. Martin Bros. Constr.*, 562 F. Supp. 3d 1094, 1100-01 (E.D. Cal. 2022) (quoting *Moreno v. Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)) ("Courts are loath to second-guess a 'winning lawyer's professional judgment as to how much time he was required to spend on the case.'").

Reviewing counsel's invoices, the Court does not find the hours billed excessive based on the described work performed. The Court finds no reason to reduce the hours billed by counsel when conducting its lodestar calculation.

**E. Lodestar Calculation and Costs**

Applying the above, the Court finds that Plaintiffs are entitled to a fee award for Mr. Schulz reflecting 703.70 hours at an hourly rate of $450, for a total of $316,665.00. For Mr. Sanders, Plaintiffs are entitled to a fee award reflecting 200.60 hours, also at an hourly rate of $450, for a total of $90,270.00. In addition to an attorneys' fee award of $406,935.00, Plaintiffs are awarded costs of $10,814.00.

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** Defendants' motion for reconsideration (ECF No. 112) and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' petition for attorneys' fees and costs (ECF No. 128). Plaintiffs

are awarded attorneys' fees of $406,935.00, and costs of $10,814.00. Defendants are jointly and severally liable for these amounts.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 2, 2026