**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VICTORIA BAUGH (aka Maria Victoria Ferrer), CHARLES LISEE, and MIYA SHANI HOOKS

Plaintiff,

v.

DETROIT CLUB MANAGEMENT CORP d/b/a THE DETROIT CLUB, SUZETTE DAYE, and LYNN KASSOTIS (aka Lynn Uralli), jointly and severally,

Defendants.

Case No. 22-CV-11427
Hon. Linda V. Parker
Magistrate Judge Kimberly G. Altman

SCHULZ LAW PLLC
Jack W. Schulz (P78078)
Amanda M. Ghannam (P83065)
*Attorneys for Plaintiff*
645 Griswold St. Suite 4100
Detroit, MI 48226
(313) 788-7446
**jack@michiganworkerlaw.com**
**amanda@michiganworkerlaw.com**

THE SANDERS LAW FIRM, P.C.
Herbert A. Sanders (P43031)
Attorney for Plaintiffs
4031 Santa Clara St.
Detroit, MI 48221
(313) 798-6356)
**Herbert@SandersForJustice.com**

GORDON REES SCULLY MANSUKHANI
Gregory M. Meihn (P38939)
Jason B. Brown (P79226)
Gordon Rees Scully Mansukhani, LLP
*Attorneys for Defendants*
37000 Woodward Ave, Ste 225
Bloomfield Hills, MI 48304
(313) 426-9815 / Fax: (313) 406-7373
**gmeihn@grsm.com**
**jbbrown@grsm.com**

Wright W Blake (P37259)
*Attorney for Defendants*
155 W. Congress Street
Suite 410
Detroit, MI 48226
(313) 964-2080 / Fax: (313) 964-1459
**bwrightlaw@yahoo.com**

**DEFENDANTS' MOTION FOR A NEW TRIAL UNDER FED. R. CIV. P. 59**

NOW COME Defendants, DETROIT CLUB MANAGEMENT CORP d/b/a THE DETROIT CLUB, SUZETTE DAYE, and LYNN KASSOTIS (aka Lynn

Uralli), by and through their attorneys, GORDON REES SCULLY MANSUKHANI, and move under Fed. R. Civ. P. 59(a) for a new trial. Grounds are in the accompanying brief, incorporated by reference. The Motion is timely filed under Fed. R. Civ. P. 59(b), (e).

As Local Rule 7.1(a) requires, Defendants contacted Plaintiff's counsel concerning this Motion on October 13, 2026 via email. The undersigned explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought, thus necessitating the filing of this motion.

WHEREFORE, Defendants, DETROIT CLUB MANAGEMENT CORP d/b/a THE DETROIT CLUB, SUZETTE DAYE, and LYNN KASSOTIS (aka Lynn Uralli), respectfully request that this Honorable Court GRANT their Motion for New Trial pursuant to Fed. R. Civ. P. 59(a).

Dated: October 13, 2026

Respectfully submitted,

*/s/ Gregory M. Meihn*

GORDON REES SCULLY
MANSUKHANI
Attorneys for Defendants
37000 Woodward Avenue, Suite 225
Bloomfield Hills, MI 48304
(313) 426-9815 | Fax: (313) 406-7373
P38939

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VICTORIA BAUGH (aka Maria Victoria Ferrer), CHARLES LISEE, and MIYA SHANI HOOKS

Plaintiff,

v.

DETROIT CLUB MANAGEMENT CORP d/b/a THE DETROIT CLUB, SUZETTE DAYE, and LYNN KASSOTIS (aka Lynn Uralli), jointly and severally,

Defendants.

Case No. 22-CV-11427
Hon. Linda V. Parker
Magistrate Judge Kimberly G. Altman

---

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR NEW TRIAL FED. R. CIV. P. 59**

Defendants hereby submit their Brief In Support of Motion for New Trial Pursuant to Fed. R. Civ. P. 59.

# TABLE OF CONTENTS


| | |
|---|---|
| **I. INTRODUCTION / PROCEDURAL BACKGROUND** | 1 |
| **II. LEGAL STANDARD** | 3 |
| **III. LAW AND ARGUMENT** | 4 |
| A. The overnight order barring attorney-client consultation requires a new trial. | 4 |
| B. Disclosing the Court's liability finding on Lisée requires a new trial. | 7 |
| C. Lisée's punitive damages award alone requires a new trial. | 9 |
| D. The Court's cumulative evidentiary errors require a new trial. | 12 |
| 1. Exclusion of the Darryl Brown security footage | 12 |
| 2. Exclusion of Kody Hooks's deposition testimony concerning perception and capacity | 14 |
| 3. Admission of Regina Djordjevic's remote and inflammatory "me-too" testimony without adequate Rule 403 balancing | 15 |
| 4. Exclusion of evidence bearing on the provenance of Plaintiffs' documentary proof | 20 |
| E. Plaintiffs' inflammatory closing argument requires a new trial. | 21 |
| 1. The appeal to wealth and ability to pay | 21 |
| 2. The appeal to punish Defendants and send a message | 22 |
| 3. The verdict supports a finding of prejudice | 23 |
| F. The Court committed error when it granted Plaintiffs' motion in limine prohibiting Defendant Uralli from testifying regarding her thoughts and views about Plaintiffs and Plaintiffs' counsel. | 23 |
| G. The Court committed error when it failed to consider the success of Defendants at the summary judgment stage in its final award of attorneys' fees. | 24 |

**IV. CONCLUSION** 25

# <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1. Whether a new trial is warranted under Fed. R. Civ. P. 59(a)(1)(A) because the Court, at an overnight recess, barred defense counsel from consulting with their party-defendant clients — including defendants who were not then testifying — in violation of the due-process right to counsel recognized in *Geders*, *Perry*, and *Potashnick*.

*Defendants' Answer: Yes.*
*Plaintiffs' Answer: No.*

2. Whether a new trial is warranted because the jury was told that the Court had already found the Detroit Club and Uralli liable for retaliating against Lisée, creating a substantial risk that the jury would defer to that determination and import it across the consolidated, multi-plaintiff trial.

*Defendants' Answer: Yes.*
*Plaintiffs' Answer: No.*

3. Whether the punitive and non-economic damages awarded to Lisée — on a claim arising from a single provoked text message for which the Court had removed liability from the jury — are so grossly excessive that they demonstrate passion and prejudice and alone require a new trial.

*Defendants' Answer: Yes.*
*Plaintiffs' Answer: No.*

4. Whether the Court's cumulative evidentiary errors require a new trial, where authenticated defense impeachment evidence (the Darryl Brown security footage and portions of Kody Hooks's deposition bearing on perception and capacity) was excluded at critical moments, while remote, inflammatory "me-too" testimony from Regina Djordjevic was admitted without the individualized Rule 403 balancing *Griffin* requires, and Defendants were barred from showing how Plaintiffs' documentary proof was obtained.

*Defendants' Answer: Yes.*
*Plaintiffs' Answer: No.*

5. Whether a new trial is warranted because Plaintiffs' counsel's closing argument urged the jury to punish Defendants as "millionaire elitists" who could pay "no verdict too large" and to "send a message" — the precise wealth-based, send-a-message appeals the Sixth Circuit condemns in *Strickland*.

*Defendants' Answer: Yes.*
*Plaintiffs' Answer No.*

6. Whether the Court erred in granting Plaintiffs' motion in limine prohibiting Defendant Uralli from testifying about her interactions with, and views of, Plaintiffs and Plaintiffs' counsel during the litigation, thereby chilling her account of the alleged improper conduct she perceived.

*Defendants' Answer: Yes.*
*Plaintiffs' Answer: No.*

7. Whether, independently and cumulatively, the foregoing errors deprive the Court of fair assurance that the verdict reflects the evidence and governing law rather than passion, prejudice, and spillover, such that the verdict is against the great weight of the evidence and a new trial is required.

*Defendants' Answer: Yes.*
*Plaintiffs' Answer: No.*

8. Whether Court erred by preventing Defendants from showing to the jury how the Matthew Laurinec documents were obtained and denial of Defendants' request to reopen discovery prior to trial based upon information acquired regarding Matthew Laurinec prior to trial.

*Defendants Answer: Yes.*
*Plaintiffs' Answer: No.*

9. Whether the Court committed error when it failed to consider the success of Defendants at the summary judgment stage in its final award of attorneys' fees.

*Defendants' Answer: Yes.*
*Plaintiffs' Answer: No.*

# INDEX OF AUTHORITIES

## Cases


| | |
|---|---|
| *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 68 F.4th 324 (6th Cir. 2023) | 4, 12, 14, 20 |
| *Buckhannon Bd. & Care Home, Inc. v W. Va. Dep't of Health & Human Res.,* 532 U.S. 598 (2001) | 24 |
| *Cantrell v. GAF Corp.*, 999 F.2d 1007 (6th Cir. 1993) | 9 |
| *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980) | 21 |
| *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338 (3d Cir. 1975) | 7 |
| *Cummins v. BIC USA, Inc.*, 727 F.3d 506 (6th Cir. 2013) | 14 |
| *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721 (6th Cir. 1994) | 15 |
| *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985 (9th Cir. 2007), aff'd on other grounds, 553 U.S. 591 (2008) | 8 |
| *Gaspar v. Dicks*, No. 08-13707, 2011 WL 5975061 (E.D. Mich. Nov. 29, 2011) | 18 |
| *Geders v. United States*, 425 U.S. 80 (1976) | 5-6 |
| *Griffin v. Finkbeiner*, 689 F.3d 584 (6th Cir. 2012) | 15, 17-19 |
| *Hale v. Firestone Tire & Rubber Co.*, 820 F.2d 928 (8th Cir. 1987) | 9 |
| *Marotta v. Ford Motor Co.*, No. 14-cv-11149, 2016 WL 3197425 (E.D. Mich. June 9, 2016) | 18-19 |
| *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454 (6th Cir. 2022) | 3, 21 |

| | |
|---|---|
| *Minneapolis, St. P. & S.S.M. Ry. Co. v. Moquin*, 283 U.S. 520 (1931) | 23 |
| *Nat'l Sur. Co. v. Jean*, 61 F.2d 197 (6th Cir. 1932) | 23 |
| *Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993) | 7 |
| *Perry v. Leeke*, 488 U.S. 272 (1989) | 5-6 |
| *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101 (5th Cir. 1980) | 5-7 |
| *Reynolds v. Ala. Dep't of Transp.*, 4 F. Supp. 2d 1055 (M.D. Ala. 1998) | 5 |
| *Strickland v. Owens Corning*, 142 F.3d 353 (6th Cir. 1998) | 4, 21-22 |
| *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205 (8th Cir. 1999) | 10 |
| *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882 (6th Cir. 2004) | 15 |
| *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999) | 15 |
| *United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275 (11th Cir. 2001) | 7 |


**Statutes and Rules**


| | |
|---|---|
| 5 U.S.C. § 552(a)(4)(E)(ii) | 24 |
| 42 U.S.C. § 1981 | 1, 2 |
| Title VII of the Civil Rights Act of 1964 | 1, 2 |
| Michigan Elliott-Larsen Civil Rights Act (ELCRA) | 1, 2 |
| Fed. R. Civ. P. 32(a)(6) | 15 |

| | |
|---|---|
| Fed. R. Civ. P. 59 | *passim* |
| Fed. R. Civ. P. 59(a) | 1, 3, 25 |
| Fed. R. Civ. P. 59(a)(1)(A) | 3, 9, 23 |
| Fed. R. Civ. P. 59(b) | 1 |
| Fed. R. Civ. P. 59(e) | 1 |
| Fed. R. Civ. P. 60(b) | 5 |
| Fed. R. Civ. P. 61 | 4 |
| Fed. R. Evid. 106 | 15 |
| Fed. R. Evid. 401 | 17 |
| Fed. R. Evid. 403 | *passim* |
| Fed. R. Evid. 404 | 17 |
| Fed. R. Evid. 404(a) | 17 |
| Fed. R. Evid. 404(b) | 17-19 |
| E.D. Mich. LR 7.1(a) | 1 |


**Other Authorities**

11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2815 (2d ed. 1995) 10

## I. INTRODUCTION/PROCEDURAL BACKGROUND

Plaintiffs Victoria Ferrer, Charles Lisee, and Miya Shani Hooks, filed an 8 Count Civil Complaint against Defendants Detroit Club Management Corp., Suzette Daye, and Lynn Kassotis with this Court on November 1, 2024, alleging numerous claims within each count. (ECF No. 63). Plaintiff Ferrer was employed by Defendant Detroit Club approximately one month before employment ended. Plaintiff Hooks was employed by the Detroit Club approximately two months before employment ended. Plaintiff Lisee was employed by the Detroit Club for approximately one year before he resigned.

On August 27, 2025, this Court issued an Opinion and Order Granting in Part and Denying in Part the Parties' Cross-Motions for Summary Judgment. (ECF No. 75) Within its decision the Court made the following rulings pre-trial:

1. **Granted** summary judgment to Defendant Suzette Daye on all of Plaintiffs' ELCRA claims, thereby dismissing the claims on the merits.
2. **Granted** summary judgment sua sponte in favor of Suzette Daye on Plaintiffs Lisee' and Hooks' 1981 claims, thereby dismissing the claims on the merits.
3. **Granted** summary judgment in favor of Defendants Suzette Daye, Detroit Club, and Lynn Uralli as to Plaintiff Lisee's race discrimination claims under Title VII, ELCRA, and 1981, thereby dismissing the claims on the merits.
4. **Granted** summary judgment in favor of Defendants Suzette Daye, Detroit Club, and Lynn Uralli as to Plaintiff Lisee hostile work environment claim under Title VII and ELCRA, thereby dismissing the claims on the merits.
5. **Granted** summary judgment in favor of Defendants Suzette Daye, Detroit Club, and Lynn Uralli as to Plaintiff Ferrer's hostile work environment claims under Title VII and ELCRA, thereby dismissing the claims on the merits.
6. **Granted** summary judgment in favor of Defendants Suzette Daye, Detroit

Club, and Lynn Uralli as to Plaintiff Lisee' retaliation claims to the extent Plaintiff Lisee claims he was constructively discharged in retaliation for protected conduct.

7. **Granted** summary judgment in favor of Plaintiff Charles Lisée as to his 1981 and ELCRA retaliation claims against Defendants Detroit Club, and Lynn Uralli to the extent that the claims are premised on retaliation after he resigned.

A two-week jury trial was held from June 11, 2026 to June 25, 2026 on the remaining claims:

A. Plaintiff Ferrer's claim for race discrimination and retaliation (1981 claim, Title VII, and Michigan Elliott Larsen Civil Rights Claim (ELCRA)), against Defendant Uralli; Plaintiff Ferrer's claim for race discrimination and retaliation (1981 claim, Title VII, and Michigan Elliott Larsen Civil Rights Claim (ELCRA)), against the Detroit Club Management Club (Detroit Club); Plaintiff Ferrer's claim for race discrimination and retaliation (1981 claim, Title VII). (Final Judgment ECF No. 144.)

B. Plaintiff Hooks claim for hostile work environment, race discrimination, and retaliation (1981 claim, Title VII, and ELCRA), against Defendant Uralli; and Plaintiff Hooks' claim for hostile work environment, race discrimination and retaliation (1981 claim, Title VII, and (ELCRA)), against the Detroit Club. *Id.*

C. Plaintiff Lisee's claims for retaliation (1981 claim, Title VII, and ELCRA) against Defendant Uralli; and Plaintiff Lisee's claim for retaliation against the Detroit Club. *Id.*

The two-week trial resulted in a verdict for lost wages of $**20.00** and **$7,490.08** in favor of Plaintiff's Hooks, lost wages of **$3000** in favor of Plaintiff Ferrer, and **$0** lost wages in favor of Plaintiff Lisee. Incredibility and beyond pale of reasonableness and the weight of the evidence produced, the jury returned a combined non-wage verdict of $6.25 million against the Defendant Detroit Club,

Defendant Lynn Uralli, and Defendant Daye for emotional distress and punitive damages Indeed, the jury assessed the following;

| Plaintiff | Defendant | Wages | Non-economic | Punitive |
|---|---|---|---|---|
| Lisée | Club | — | $100,000 | $335,000 |
| Lisée | Uralli | — | $500,000 | $750,000 |
| Hooks | Club | $7,490.08 | $200,000 | $350,000 |
| Hooks | Uralli | $20 | $750,000 | $1,000,000 |
| Ferrer | Club | $3,000 | $250,000 | $500,000 |
| Ferrer | Uralli | $0 | $500,000 | $1,000,000 |
| Ferrer | Daye | $0 | $2,500 | $5,000 |

However, and unfortunately for Defendants, the trial record was tainted and tilted at decisive moments during the trial. For the reasons set forth below, a new trial is warranted.

## II. LEGAL STANDARD

Rule 59(a)(1)(A) permits a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A new trial may be warranted when the verdict conflicts with the weight of the evidence, improper argument causes the verdict to rest on prejudice rather than the merits, or an excessive award reflects passion or mistake. *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 468 (6th Cir. 2022). When the verdict is

challenged as contrary to the weight of the evidence, the court must compare the opposing proofs, weigh the evidence, and determine whether the verdict is against the clear weight of the evidence. *Strickland v. Owens Corning*, 142 F.3d 353, 357–60 (6th Cir. 1998).

For grounds based on evidentiary error, Rule 61 requires the Court to disregard errors that do not affect a party's substantial rights. Fed. R. Civ. P. 61. The party seeking relief bears the burden of demonstrating prejudice. *Appalachian Regional Healthcare, Inc. v. U.S. Nursing Corp.*, 68 F.4th 324, 331–33 (6th Cir. 2023). The Sixth Circuit applies the "fair assurance" test: the Court must consider the proceedings as a whole and determine whether it can say, with fair assurance, that the error did not substantially influence the judgment. *Id*. at 332–33. If the Court cannot do so, the error affected substantial rights and a new trial is warranted.

## III. LAW AND ARGUMENT

### A. The overnight order barring attorney-client consultation requires a new trial.

The Court prohibited defense counsel from consulting with their clients overnight, including party-defendants who were not then testifying. The restriction extended beyond any concern about influencing a witness's ongoing testimony and prevented Defendants from consulting counsel about the defense of their case. The Supreme Court distinguishes a brief recess during ongoing testimony from an overnight adjournment. During a brief recess, a trial court may prohibit a testifying

criminal defendant from consulting counsel because the conversation can reasonably be expected to concern the ongoing testimony. *Perry v. Leeke*, 488 U.S. 272, 281–85 (1989). An overnight recess implicates broader consultation about the case. In *Geders v. United States*, 425 U.S. 80, 88–91 (1976), the Court held that an order barring a criminal defendant from consulting counsel during a seventeen-hour overnight recess violated the Sixth Amendment.[1]

Civil litigants have a corresponding right to retained counsel under the Due Process Clause. In *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1117–19 (5th Cir. 1980), the court held that a prohibition on consultation between counsel and the defendant corporation's president and sole shareholder during his multi-day testimony violated the corporation's due-process right to counsel. *Id.* at 1118–19. *Reynolds v. Alabama Department of Transportation*, 4 F. Supp. 2d 1055, 1066–67 (M.D. Ala. 1998), likewise recognized that a civil party must be permitted to consult counsel about trial strategy and other non-testimonial matters during extended recesses. Here, counsel expressly asked whether he could speak with Uralli and Daye, and the Court refused. The accommodation that distinguished Reynolds is absent here.

[1] *Perry* reaffirmed that the right to consult counsel about matters beyond the defendant's testimony controls during a prolonged recess. *Perry*, 488 U.S. at 284.

The restriction here was broader still. Uralli and Daye were not on the stand when the Court issued the order. Prohibiting counsel from discussing their defense overnight therefore cannot be justified as preserving uninterrupted cross-examination of those Defendants. The order deprived them of the consultation that *Geders*, *Perry*, and *Potashnick* protect during an extended recess.

The record establishes the breadth of the prohibition. At the June 22 adjournment, the Court directed counsel to spend the evening "not talking to your own clients, not talking to any other representatives." (Trial Trans. ECF No. 138, PageID.15083). When defense counsel asked whether he could speak with Daye and Uralli, the Court answered, "No." *Id*. The Court then reiterated that "no one is to have any conversations with clients." *Id.* at PageID.15085. Those instructions were not limited to Jenny Thomason, the witness whose testimony was ongoing.

The next morning, when defense witness, Jenny Thomason was late, counsel confirmed that he had refrained from all client contact "per [the Court's] direction" and understood himself to be "prohibited" from contacting clients by "the gag order" imposed "yesterday at 4:00." (Trial Trans. ECF No. 139, PageID.15139.)

Defendants submit that this deprivation warrants a new trial without a separate showing that the lost consultation changed the verdict. *Perry* explained that a showing of prejudice is not required for the Sixth Amendment violation recognized in *Geders*. *Potashnick* applied the underlying right of consultation in a civil case and

treated its violation as an independent ground for reversal. *Potashnick,* 609 F.2d at 1118–19. The same reasoning supports a new trial here: Defendants should not be required to reconstruct the advice and strategic discussions that the Court's order prevented.

**B. Disclosing the Court's liability finding on Lisée requires a new trial.**

The disclosure of a judge's liability finding to a civil jury creates an acute risk that jurors will defer to the court's determination rather than decide the remaining issues from the evidence presented at trial. In *Coleman Motor Co. v. Chrysler Corp*., 525 F.2d 1338, 1351 (3d Cir. 1975), the Third Circuit held that admitting a prior verdict against the defendant was prejudicial because a jury might give the prior result undue weight and decide the case on evidence not before it. The court therefore ordered a new trial. *Id*. at 1353–54.

The Fourth Circuit reached a similar conclusion in *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) holding that judicial findings of fact pose a "serious danger of unfair prejudice," because jurors are likely to give findings made by a judge undue weight. *Id*. The Eleventh Circuit likewise held that it was an abuse of discretion to place a judge's opinion before the jury because the jury was responsible for finding the facts. *United States Steel, LLC v. Tieco, Inc*., 261 F.3d 1275, 1287–88 (11th Cir. 2001).

The Ninth Circuit applied the same principle in the employment context, holding that a prior verdict finding discrimination was inadmissible under Rule 403 because of the substantial risk that the jury would import the prior liability determination into the case before it. *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1008–10 (9th Cir. 2007), aff'd on other grounds, 553 U.S. 591 (2008).

Here, the Court's own order recognized the danger of disclosing its liability determination. The Court described the finding as "relevant and not unduly prejudicial" and proposed informing the jury, by stipulation or instruction, that "it already has been determined that the Detroit Club and Uralli retaliated against Lisée." (Opinion & Order, ECF No. 105, PageID.12606 & n 2.) But the jury was not merely told the underlying fact that Lisée experienced retaliation. It was told that the Court had already adjudicated liability. The verdict form instructed the jury to "[a]ssum[e] this defendant's liability for retaliating against Mr. Lisee," and the jury was told that it would be "only tasked with determining liability for Ferrer and Hooks." (Verdict, ECF No. 141, PageID.15511; Trial Trans. ECF No. 130, PageID.13614.) That disclosure was unnecessary.

The disclosure also created a substantial spillover risk. The Sixth Circuit has recognized the "potential for prejudice resulting from a possible spill-over effect of evidence" relevant to one plaintiff and cautioned that "care must be taken that

consolidation does not result in unavoidable prejudice or unfair advantage." *Cantrell v. GAF Corp*., 999 F.2d 1007, 1011 (6th Cir. 1993).

The risk identified in *Cantrell* materialized here. Defendants expressly warned that jurors might believe that the Court's "finding of liability for Lisee indicates a finding of liability of all the Plaintiffs." (Defs.' Mot. in Limine, ECF No. 87, PageID.12356.) The disclosure then informed the jury, during the same trial, that the Court had already found one defendant liable on a materially similar retaliation theory. That information could reasonably have influenced the jury's assessment of Ferrer's and Hooks's liability, as well as the damages attributable to Lisée.

Because the disclosure created a substantial risk that the jury would defer to the Court's liability determination or transfer it to the other defendants, the Court therefore cannot conclude with fair assurance that the verdict was not substantially swayed by the disclosure. A new trial is warranted under Rule 59(a)(1)(A).

**C. Lisee's punitive damages award alone requires a new trial.**

The enormous damages awards to all three plaintiffs are excessive and unsupported by the evidence. But the award to Charles Lisee is especially egregious under the circumstances and in and of itself requires a new trial.

When a punitive damage award is the result of passion and prejudice, a new trial is usually required and remittitur is an inappropriate remedy. *Hale v. Firestone Tire & Rubber Co.,* 820 F.2d 928, 936 (8th Cir.1987). Remittitur is often inadequate

in this situation because the passion and prejudice may have affected the jury's decision on the question of liability, as well as damages. *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1210 (8th Cir. 1999), *citing* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2815 (2d ed.1995).

This principle requires a new trial based solely on the enormous damages award given to Charles Lisee, which very plainly reflects passion and prejudice on the part of the jury—not reason or logic. The jury's award to Charles Lisee is so ridiculously out of proportion with the most that could conceivably be supported by the evidence that it is impossible adequately to describe the chasm in between. It must be borne in mind that the entire sum and substance of what was done to Lisee is a single mean text. That is all. One text. He was not assaulted or physically injured. He was not discriminated against because of his gender, race, or any other immutable characteristic. He was not terminated or subject to mistreatment at his job. He was sent *a single text*. And yes, the text was harsh, as has been discussed repeatedly. But Uralli's text was also *maliciously provoked* by Lisee—and Uralli apologized for sending the harsh text even though it was maliciously provoked.

That Lisee's actions constituted malicious provocation is proven by his own testimony. He acknowledged, on direct examination, his own recognition that, "as a business owner, I was sensitive to getting a bad review and how that can destroy what a company has been working, you know, building a reputation for so many

years." (Trial Trans. ECF No. 131, PageID.13799.) He continued, "and so my concern was that it would only take one of the incidents of the many incidents that I had been witnessing to become public, that could potentially jeopardize the business." *Id.* Thus, when Lisee intentionally posted his very inflammatory letter on Facebook, he did so knowing that it was likely to destroy the business that Uralli had spent, to use Lisee's words, "so many years" building. *And* he did so without even having the courtesy to report to her any of the incidents he claims to have observed. Never once did he even give her an opportunity to address them directly. He instead laid low, then posted a very inflammatory letter on Facebook that he knew was likely to destroy the business. Uralli had spent years building. Anyone in Uralli's position would have been furious with the actions taken by Lisee.

The reason this is important is that the damages the jury awarded Lisee had little to do with the racial aspects of his letter. He was awarded damages because the jury perceived Uralli's text as being mean to him. The evidence at trial was clear that the reason Uralli sent the text was not because Lisee complained of racism, but because he intentionally *posted on Facebook an inflammatory letter that he knew could destroy her business.*[2]

---

[2] Because the reason for Uralli's text was Lisee's malicious act of posting his letter on Facebook, not the reporting of racism, it likely did not even constitute unlawful retaliation. But Defendants were prohibited from making that argument, since the Court granted summary judgment in favor of Lisee on that claim.

Inasmuch as the act of sending a harsh text is not even actionable, the notion that doing so in response to being maliciously provoked, then still apologizing for doing so, warrants even a five-figure damages award is not well taken. The jury's award of $600,000 in mental anguish damages, plus $1,085,000 in punitive damages for receiving a single harsh text is so far beyond grossly excessive that it defies description. And it cannot possibly be viewed as *not* having been driven by passion and prejudice. That patently absurd damages award is alone sufficient to prove the entire verdict is tainted, and a new trial is required.

**D. The Court's cumulative evidentiary errors require a new trial.**

Each ruling must be assessed under the same harmless-error standard: the verdict cannot stand unless the Court can say, with "fair assurance," that the judgment was not substantially swayed by the error. *Appalachian Regional Healthcare, Inc. v. U.S. Nursing Corp.*, 68 F.4th 324, 331–33 (6th Cir. 2023). Considered together, the rulings produced a significant asymmetry: authenticated defense evidence was excluded at a critical moment, defense impeachment evidence was truncated, and highly inflammatory plaintiff-side evidence was admitted without an adequate Rule 403 analysis.

**1. Exclusion of the Darryl Brown security footage**

The security footage involving Mr. Brown was central impeachment evidence. Brown had viewed the video during his deposition, and Defendants had

identified it on their exhibit list from the first joint exhibit list forward. (Trial Trans. ECF No. 139, PageID.15250.) When Brown testified at trial that he "can't recall what the video really shows," Defendants sought to confront that testimony with a recording he had already seen and had an opportunity to address. (Trial Trans. ECF No. 136, PageID.14541.)

During Brown's testimony, Defendants offered the footage. The Court excluded it on the stated ground that it "hadn't been shown." (*Id*. at PageID.14540.) The video directly concerned Brown's recollection and credibility regarding the incident depicted in the recording. Its use would have allowed Defendants to test Brown's testimony while he was on the stand.

The jury heard Brown profess an inability to recall the recording while Defendants were prevented from showing him the recording that could have tested his recollection, credibility, and account of the incident. The Court later admitted the same footage through Uralli. (Trial Trans. ECF No. 139, PageID.15254-5.) That later admission did not restore Defendants' lost opportunity to impeach Brown while he was testifying. When Defendants renewed the offer to admit the footage, the Court acknowledged, "I know on the second trial exhibit list, it's there," and stated, "I don't think it's going to be any prejudice." *Id*. at PageID.15254. By then, however, Defendants had lost the opportunity to use the recording to impeach Brown at the moment it mattered most. Defendants also narrowed their offer to a single clip—

"video one on the Darryl Brown incident"—rather than pressing the additional footage they otherwise sought to introduce. *Id*. at PageID.15255.

The Court cannot conclude with fair assurance that the exclusion did not substantially influence the verdict. See *Cummins v. BIC USA, Inc*., 727 F.3d 506, 514–15 (6th Cir. 2013); *Appalachian Regional Healthcare,* 68 F.4th, 331–33.

**2. Exclusion of Kody Hooks's deposition testimony concerning perception and capacity**

Kody Hooks did not testify live; his deposition testimony was read to the jury. Over Defendants' objections, the Court excluded several defense-designated portions of that deposition, including testimony from pages 16, 22, 24, 50–51, 57–58, and 61. (Trial Trans. ECF No. 140, PageID.15346-9.) Defense counsel explained that the designations addressed Hooks's "mindset" and "capabilities" when he communicated and wrote his statements, including whether he was intoxicated when he wrote the Google review and whether intoxication affected his perception of the underlying events. (*Id*. at PageID.15354-7.)

The Court nevertheless excluded the testimony as merely a "reflection of his frustration at the deposition," leaving only the isolated statement, "I was drinking." (*Id*. at PageID.15356-7.)

That ruling improperly deprived Defendants of meaningful impeachment. A witness's ability to perceive, remember, and accurately recount events is classic impeachment evidence. Moreover, when one party introduces only portions of a

deposition, the rule of completeness requires admission of additional portions that "ought in fairness to be considered" with the portions introduced. Fed. R. Evid. 106; Fed. R. Civ. P. 32(a)(6); *Engebretsen v. Fairchild Aircraft Corp*., 21 F.3d 721, 726 (6th Cir. 1994); *Trepel v. Roadway Express, Inc*., 194 F.3d 708, 718–19 (6th Cir. 1999).

By admitting his account while excluding testimony bearing on whether intoxication affected his perception and recollection, the Court allowed the jury to hear adverse testimony without the evidence necessary to evaluate its reliability. That was especially prejudicial because the excluded material concerned a disputed issue and was not cumulative of the single statement that Hooks had been drinking. *See Tompkin v. Philip Morris USA, Inc*., 362 F.3d 882, 891–92 (6th Cir. 2004). The error cannot be deemed harmless under the fair-assurance standard.

**3. Admission of Regina Djordjevic's remote and inflammatory "me-too" testimony without adequate Rule 403 balancing**

The admissibility of "me-too" evidence concerning alleged mistreatment of other employees depends on the circumstances, including the relationship between the other conduct and the challenged employment decisions, the similarity of the actors and circumstances, and the temporal proximity of the events. *Griffin v. Finkbeiner*, 689 F.3d 584, 595–96 (6th Cir. 2012). Such evidence is "neither per se admissible nor per se inadmissible," and the trial court must undertake a fact-intensive, witness-by-witness assessment under Rules 401, 403, and 404 before it

reaches the jury. *Id.* Rule 403 then requires the Court to exclude even relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. Fed. R. Evid. 403.

Defendants preserved this issue. Before Djordjevic was called, counsel objected at sidebar and argued that her account should be excluded under Rule 404. Counsel explained that her experiences were "four years old" and that a party may not "use an individual's prior character or behavior or acts in a case later on to prove the truth of the matter asserted," particularly where Plaintiffs offered the testimony in their case-in-chief rather than as rebuttal. (Trial Trans. ECF No.135, PageID.14388.) Djordjevic had worked at the Club only in 2018, and counsel explained that Plaintiffs were offering her testimony "for the purpose of trying to show that Lynn has acted in 2022 in conformity with what she experienced in 2018." (*Id.* at PageID.14389.) That is the paradigmatic propensity use Rule 404 forbids. Counsel further confirmed that the alleged acts were "[n]ot dealing with the claims from this particular time period . . . of the instant matter." (*Id.*) Counsel pressed that admitting the 2018 account would invite the jury to "draw . . . the conclusion that if she engaged in that activity in 2018 . . . that's what she did in 2022," that there had "been no trial on that," and that the evidence was therefore "prejudicial and unfair." (*Id.* at PageID.14391.)

Moreover, the testimony was not relevant to the claims actually tried. Djordjevic's relationship with the Club ended in or about April 2018 (roughly three to four years before the 2021–2022 events underlying Plaintiffs' claims) and she never worked alongside Ferrer, Hook, or Lisée or observed any of the decisions at issue. (Trial Trans. ECF No. 129, PageID.13492.) Her testimony instead catalogued a series of alleged 2018 remarks, that guests or employees were "too black" or "getting a little too dark," that a person was "Mexican trashy," that the Club need not pay certain workers "because they're gonna steal stuff," that others were "gangbangers," and that the "N-word and pig" were used toward two front-desk hostesses. (*Id.* at PageID.13492-3.) None of that conduct involved the Plaintiffs or the retaliation theory on which the remaining claims were tried. Evidence this remote in time, involving different employees, had little or no tendency to make any fact of consequence to the 2021–2022 decisions more or less probable. Fed. R. Evid. 401. Its only real force was the forbidden inference that because Uralli allegedly used slurs in 2018, she acted in conformity with that character years later. Fed. R. Evid. 404(a); *Griffin*, 689 F.3d at 595–96.

Even if the 2018 account carried some marginal relevance, the Court admitted it without conducting the individualized Rule 403 balancing that *Griffin* requires. The Court's ruling rested entirely on Rule 404(b) and unpublished cases, reasoning that evidence of retaliation or racial harassment of other employees was "relevant

and permissible under Rule 404(b)" to show motive and to establish a hostile work environment, and citing *Gaspar v. Dicks*, No. 08-13707, 2011 WL 5975061 (E.D. Mich. Nov. 29, 2011)[3], and *Marotta v. Ford Motor Co.*, No. 14-cv-11149, 2016 WL 3197425 (E.D. Mich. June 9, 2016)[4]. (Trial Trans. ECF No. 135, PageID.14506-8.) The Court did not weigh the probative value of this remote, slur-laden testimony against its substantial potential for unfair prejudice, confusion, and an emotionally driven verdict.

Neither of the cases the Court relied upon supports that result. Read correctly, both require exclusion here. *Gaspar* was not an employment-discrimination case at all. It was a First Amendment retaliation action under § 1983 challenging a police department's media policy, and the "other acts" at issue were disciplinary actions taken by *the same decisionmaker* against *other officers* for *the same protected conduct* - speaking to the media. *Gaspar*, 2011 WL 5975061, at *2.

*Marotta* is equally unavailing, because it imposed precisely the safeguards the Court omitted. There, before any "me-too" evidence could reach the jury, the court required the plaintiff to make a *proffer outside the jury's presence* and to satisfy the *Griffin* factors, including whether the same person harassed the other employee, whether the other employee was "similarly situated," whether the nature of the

---

[3] Unpublished opinion attached hereto as **Exhibit A.**
[4] Unpublished opinion attached hereto as **Exhibit B.**

conduct was similar, and the "temporal and geographical proximity" of the events, followed by a Rule 403 balancing. *Marotta*, 2016 WL 3197425, at *7. Applying those factors, *Marotta excluded* evidence of harassment that was roughly a decade old and involved a different facility and different supervisors, holding that its marginal relevance was "substantially outweighed by the dangers of jury confusion and undue delay" and unfair prejudice. *Id.* at *8. It likewise excluded evidence of a supervisor's general "management style" of bullying as inadmissible propensity evidence under Rule 404(b) and Rule 403. *Id.* at *7. Here, there was no proffer outside the jury's presence, no on-the-record application of the *Griffin* factors, and no Rule 403 balancing. Djordjevic's remote, slur-laden 2018 account is materially indistinguishable from the attenuated, different-actor evidence *Marotta* held inadmissible. The authorities the Court invoked thus confirm the error rather than excuse it.

That omission is reversible on its own terms: *Griffin* requires more than a relevance determination; it requires the Court to balance probative value against unfair prejudice for each "me-too" witness before the evidence reaches the jury. *Griffin*, 689 F.3d at 595–96; Fed. R. Evid. 403.

The prejudice is clear. Plaintiffs relied on Djordjevic's testimony in closing to argue that the Urallis exercised influence over "lawyers, prosecutors, judges" and could "get the police to do whatever they want." (Trial Trans. ECF No. 130,

PageID.13633.) That argument invited the jury to decide the case based on inflammatory, years-old allegations and perceived power rather than the evidence concerning the particular decisions at issue. Considered alongside the exclusion of the Brown footage and the restriction of Hooks' impeachment testimony, the error defeats any fair assurance that the verdict was not substantially swayed. *Appalachian Reg'l Healthcare,* 68 F.4th 331–33.

**4. Exclusion of evidence bearing on the provenance of Plaintiffs' documentary proof**

Plaintiffs' documentary case included internal Club emails that reached Plaintiffs' counsel only because a terminated employee, Matthew Laurinec, accessed the Club's systems after his termination. The Court found Defendants had substantiated that Laurinec "improperly accessed Defendants' email system after his termination." (ECF No. 62, PageID.6807.) Over Defendants' opposition, the Court nonetheless granted Plaintiffs' motion in limine (ECF No. 82) and barred Defendants from showing the jury how those documents were obtained, reasoning that "it is the documents that are relevant, not how they were acquired." (ECF No. 105, PageID.12601.) Because of the manner in which an adverse former employee extracted the materials bore on the weight the jury should give them, the exclusion withheld a legitimate line of challenge to a portion of Plaintiffs' proof, compounding the other evidentiary rulings addressed above.

Further, the Court's denial of Defendant's request to reopen discovery (ECF No. 58) regarding the issues surrounding Matthew Laurinec and his illegal penetration of Defendant Club's computer systems, denial of expedited motion to reopen discovery (ECF No. 59) based Matthew Laurinec's activities, and denial of Defendants' motion under Rule 60 and/or reconsideration filed on May 22, 2026 (ECF No. 143) to reopen discovery based upon new evidence was error and affected the ability of Defendants to provide the proper scope and picture of the true acts and actions of the Plaintiffs in this matter.

**E. Plaintiffs' inflammatory closing argument requires a new trial.**

A new trial is warranted when improper argument causes the verdict to "rest more on prejudice against the losing party than on the merits." *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 471 (6th Cir. 2022). When counsel's argument is improper and creates "a reasonable probability that the verdict of [the] jury has been influenced by such conduct," the verdict should be set aside. *Strickland v. Owens Corning*, 142 F.3d 353, 357–60 (6th Cir. 1998), 142 F.3d 353, 358 (6th Cir. 1998) (quoting *City of Cleveland v. Peter Kiewit Sons' Co*., 624 F.2d 749, 756 (6th Cir. 1980)).

**1. The appeal to wealth and ability to pay**

The Sixth Circuit condemns closing arguments that appeal to class prejudice by placing the jury in opposition to a wealthy party. Here, Plaintiffs' counsel

repeatedly made that appeal. Counsel told the jury that "money is all that they care about," argued that there was "likely no verdict too large that the defendants will not be able to pay," and warned that a verdict of "a million dollars or less" would allow Defendants to "high-five each other, walk to the Detroit Club, pop champagne and talk about how they got away with it." (Trial Trans. ECF No. 130, PageID.13624-5.) Counsel further compared the damages award to a speeding ticket calibrated to a defendant's wealth." *Id*. at PageID.13625. Counsel then characterized Defendants as "millionaire elitists who have no comprehension of normal life." *Id*. at PageID.13629.

**2. The appeal to punish Defendants and send a message**

Plaintiffs' counsel also urged the jury to impose punitive damages as a personal and public punishment. Counsel asked the jury to "issue verdicts with substantial punitive damages awards so that the next time Lynn Uralli and the Detroit Club think about threatening a person . . . they think about what happened in this federal courthouse today." (Trial Trans. ECF No. 130, PageID.13634.) Counsel then tied that punitive purpose directly to the amount requested: "That is why we're asking for such a large verdict." *Id*.

Under *Strickland*, an argument that pits the jury against a defendant and seeks a verdict driven by prejudice warrants a new trial when there is a reasonable probability that it influenced the result. *Strickland,* 142 F.3d at 358–59.

### 3. The verdict supports a finding of prejudice

It is clear from the jury's verdict that Plaintiff's counsel's improper tactics worked. The Supreme Court has held that a verdict influenced "in any degree" by appeals to passion and prejudice cannot stand. *Minneapolis, St. P. & S.S.M. Ry. Co. v. Moquin*, 283 U.S. 520, 521–22 (1931). Such appeals may produce "a wholly wrong verdict," rather than merely an excessive one. *Id*. The Sixth Circuit applies the same principle: when improper argument causes a verdict to result from "passion, prejudice, or caprice," "[t]he remedy is a new trial." *Nat'l Sur. Co. v. Jean*, 61 F.2d 197, 199 (6th Cir. 1932).

Considering the frequency and emphasis of Plaintiffs' remarks, their lack of evidentiary relevance to the proper calculation of damages, a new trial is therefore warranted under Rule 59(a)(1)(A).

## F. The Court committed error when it granted Plaintiffs' motion in limine prohibiting Defendant Uralli from testifying regarding her thoughts and views about Plaintiffs and Plaintiffs' counsel.

The Court committed error when, over Defendants' objection, granted Plaintiffs' motion in limine excluding Defendant Uralli from being able to testify regarding her interactions and feelings regarding Plaintiffs' counsel's acts and actions during the litigation. This ruling by the Court effectively chilled Defendant Uralli from being able to testify regarding her truth and the alleged improper actions

she believed that Plaintiffs and Plaintiffs' counsel had engaged in during the litigation.

**G. The Court committed error when it failed to consider the success of Defendants at the summary judgment stage in its final award of attorneys' fees.**

Under the framework established in *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res*., 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)[5], a party achieves prevailing party status only when a court awards some relief on the merits of the claim. The Supreme Court held that a prevailing party is one who has been awarded some relief by a court, and that this standard requires either (1) an enforceable judgment on the merits or (2) a settlement agreement enforced through a court-ordered consent decree that creates a material alteration of the legal relationship between the parties.

This Honorable Court failed to follow establish process of looking at the totality of the results. Indeed, **a total of 14 claims were brought against Defendant Suzette Daye, with 12 of the claims dismissed prior to trial** for failure to establish a genuine issue of material fact, and 2 claims were found against Defendant Suzette Daye at the close of trial.

---

[5] Congress legislatively overruled *Buckhannon*'s rejection of the catalyst theory for FOIA cases through the OPEN Government Act of 2007, 5 U.S.C. § 552(a)(4)(E)(ii), but *Buckhannon* remains controlling for other fee-shifting statutes.

With regard to Lynn Uralli, a total of **17 claims were brought against Defendant Lynn Uralli, with 8 of the claims being dismissed prior to trial for failure to establish a genuine issue of material fact,** 1 claim found in favor of Plaintiff Lisee against Defendant Lynn Uralli at the summary judgment stage, and 7 claims were found against Defendant Lynn Uralli at the close of trial.

Finally, with regard to the Detroit Club, a total of **17 claims were brought against Defendant Detroit Club, with 9 of the claims being dismissed prior to trial for failure to establish a genuine issue of material fact**, 1 claim found in favor of Plaintiff Lisee against Defendant Detroit Club at the summary judgment stage, and 7 claims were found against Defendant Detroit Club at the close of trial. The Court failed to consider the results prior to trial and apportioned the fees awarded based upon the success that Defendants had at the pre-trial stage of the ligation.

## IV. CONCLUSION

Defendants respectfully request that this Honorable Court GRANT their Motion for New Trial pursuant to Fed. R. Civ. P. 59(a).

Dated: October 13, 2026

Respectfully submitted,

*/s/ Gregory M. Meihn*
GORDON REES SCULLY
MANSUKHANI
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on **October 13, 2026**, a copy of the foregoing document was served upon the following individuals via the Court's ECF system:

Jack W. Schulz
jackwschulz@gmail.com

Herbert A. Sanders
herbert@sandersforjustice.com

Wright W. Blake, Jr.
bwrightlaw@yahoo.com

*/s/ Greogry M. Meihn*
GORDON REES SCULLY MANSUKHANI
Attorneys for Defendants
37000 Woodward Avenue, Suite 225
Bloomfield Hills, MI 48304
(313) 426-9815 | Fax: (313) 406-7373
P38939